IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MURRAY HALL, III,

                         Plaintiff,              Civil Action No.
                                           9:17-CV-1069 (GTS/DEP)
     v.

ANTHONY J. ANNUCCI, *et al.*,

                         Defendants.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF:

MURRAY HALL, III, *Pro Se*
93 North Fair Field Drive
Dover, DE 19901

FOR DEFENDANTS:

HON. BARBARA UNDERWOOD       KYLE W. STURGESS, ESQ.
New York State Attorney General     Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER, REPORT, AND RECOMMENDATION

     Plaintiff Murray Hall, III, a former New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983 and the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, against five individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), including the DOCCS Acting Commissioner. The suit was originally filed in the United States District Court for the Eastern District of New York, but was later transferred to this district. Plaintiff's civil rights claims in the action center upon meals served to him that, according to him, were inconsistent with his Islamic religious beliefs, and violated his right to equal protection. Plaintiff claims that while the beliefs of Jewish inmates are accommodated through the provision of a religious diet, Muslim inmates are not accorded the same treatment.

In lieu of answering the complaint, defendants have instead moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's claims based upon his failure to exhaust available administrative remedies before commencing suit. For the reasons set forth below, I recommend that defendants' motion be granted.

I.    BACKGROUND[1]

---

[1]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in the non-movant's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003). The court notes that plaintiff has admitted every fact contained within defendants' Local Rule 7.1(a)(3) Statement of Material Facts. *Compare* Dkt. No. 23-1 *with* Dkt. No. 28 at 6.

Although he has since been released, at the times relevant to his claims plaintiff was a prison inmate entrusted to the custody of the DOCCS and confined in the Greene Correctional Facility ("Greene"), located in Coxsackie, New York. *See generally* Dkt. No. 13. Plaintiff is a member of the Muslim faith. *Id.*

According to plaintiff, he requested that he be provided with a halal meal from the cafeteria at Greene.[2] Dkt. No. 13 at 3. Although plaintiff was apparently offered an alternative entrée, which included a meatless sauce, he believed that the alternative meal was not consistent with the tenets of Islam. *Id.* Plaintiff complained that "if the Jewish inmates get kosher meals,

---

[2]     One district court has characterized the Muslim religious dietary requirements as follows:

> [T]he Koran dictates that practicing Muslims eat food that is Halal, which means allowed or lawful. The opposite of Halal is Haram, which means prohibited or unlawful. A Halal diet includes fruits, vegetables and all things from the sea. The flesh of herbivorous animals, such as cows, lambs, chickens and turkeys, is Halal if it is slaughtered with the appropriate prayer and in the appropriate manner. Certain items are Haram and cannot be made Halal through ritual slaughter. Examples of such Haram items include pork and all pork by-products, carrion and the flesh of carnivorous animals, such as cat, dog, rat, lion, tiger, and eagle. Intoxicants of all types are also Haram. Halal does not require separate preparation and serving facilities after Halal meat is slaughtered according to ritual.

*Cox v. Kralik*, No. 05-CV-5917, 2006 WL 42122, at *1, n.1 (S.D.N.Y. Jan. 6, 2006) (quoting *Abdul–Malik v. Goord*, No. 96-CV-1021, 1997 WL 83402, at *1 (S.D.N.Y. Feb.27, 1997)).

3

then the Muslim inmates should get [h]ala[l] meals[] because the Fourteenth Amendment demand[s] it."[3] *Id.*

On May 3, 2017, plaintiff submitted a grievance, which was ultimately designated as grievance number GNE-9335-17, to the Inmate Grievance Resolution Committee ("IGRC") at Greene. Dkt. No. 13 at 4; *see* Dkt. No. 23-3 at 8. In it, he complained that although inmates of the Jewish faith receive kosher meals, DOCCS "disregard[s] the Muslim[] [r]eligious diets." Dkt. No. 23-3 at 8. Plaintiff claimed that he was being forced to violate the tenets of his faith, and stated, *inter alia*, "I want the messhall to give me [h]ala[l] meals and I want this grievance sent to the Central Office." *Id.*

In his grievance, plaintiff noted that he had written to defendant Annucci regarding the lack of halal meals at Greene. Dkt. No 23-3 at 8. By letter dated May 19, 2017, defendant Daniel Martuscelllo, the DOCCS Deputy Commissioner for Administrative Services, responded on defendant Annucci's behalf, stating:

> Please be advised, the [DOCCS] offers an alternative entree on the general confinement menu whenever meat is served. The alternative entree may be a halal chicken patty, sliced cheese, hard boiled eggs, or a meatless sauce/casserole.

---

[3]     The Second Circuit has observed that "Kosher meat is prepared in a way that satisfies all the requirements of Halal meat. Hence, Kosher meat is Halal, even though Halal meat is not necessarily Kosher." *Perez v. Westchester Cty. Dept of Corr.*, 587 F.3d 143, 144 n.1 (2d Cir. 2009).

4

>        You are not being 'forced to eat' non-halal food
> or starve. Consuming the alternative entrée does not
> violate the tenets of Islam.

Dkt. No. 28 at 5.

On May 22, 2017, the IGRC denied plaintiff's grievance, and in so

doing stated the following:

> The response provided by the Coordinating
> Chaplain, [defendant] Deacon Y[oung], indicates
> there is currently no provision for daily [h]ala[l] meals
> to be provided to Muslim inmates. Grievant can
> contact Imam G. to address issues with regard to his
> religious designation, services etc. This grievance is
> 'Departmental' in nature and is therefore beyond the
> purview of the facility Inmate Grievance Program
> (IGP). Dkt. No. 23-3 at 9.

Dkt. No. 23-3 at 9. On the day he received the IGRC's response, plaintiff

appealed the denial to defendant Brandon Smith, the superintendent at

Greene. *Id.* Plaintiff received a response from defendant Smith on June 15,

2017, in which Smith stated as follows:

> There is currently no provision to provide daily
> [h]ala[l] meals. Grievant can contact Imam G. to
> address issues with regard to his religious
> designation, services, meals etc. This grievance is
> 'Departmental' in nature and is therefore beyond the
> purview of the facility Inmate Grievance Program
> (IGP).**Grievance will be sent to CORC for final
> disposition.** Dkt. No. 23-3 at 10 (emphasis added).

Dkt. No. 23-3 at 10. Although defendant Smith's response indicated that

plaintiff's grievance was being forwarded to the CORC, on June 19, 2017, plaintiff completed the "appeal statement" contained on defendant Smith's response, indicating that he wanted to receive halal fish and chicken on a daily basis. *Id.*

According to Rachel Seguin, the Assistant Director of the IGP for the DOCCS, as of a least June 1, 2018, plaintiff's grievance was considered to be an "active case," indicating that the CORC still had not yet issued a decision regarding the appeal. Dkt. No. 23-3 at 2-3.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on May 17, 2017 in the United States District Court of the Eastern District of New York. Dkt. Nos. 1, 2. Named as defendants in plaintiff's complaint are Anthony Annucci, the Acting Commissioner of DOCCS; Daniel Martuscello, the DOCCS Deputy Commissioner for Administrative Services; Jeff McCoy, the DOCCS Deputy Commissioner for Program Services; Brandon Smith, the Superintendent at Greene; and Deacon Young, a Chaplain.[4]  The matter was subsequently transferred to this district by order of United States District Judge Margo K.

---

4       Plaintiff's papers indicate that the proper spelling of this defendant's name is "Daniel Martuscello," rather than "Daniel Mortuscello," the name under which he was sued. Dkt. No. 28 at 5. The clerk of the court will respectfully be directed to modify the court's records to reflect this change.

Brodie, issued on September 25, 2017. Dkt. No. 4.

Following the transfer, Chief United States District Judge Glenn T. Suddaby issued a decision and order on December 15, 2017, in which he granted plaintiff permission to proceed *in forma pauperis* and reviewed his complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 9. In that decision, Chief Judge Suddaby concluded that the complaint was subject to dismissal for plaintiff's failure to state a claim upon which relief could be granted, but nonetheless afforded plaintiff an opportunity to submit an amended pleading. *See generally id.*

Plaintiff availed himself of that opportunity and submitted an amended complaint on February 5, 2018. Dkt. No. 13. Upon reviewing plaintiff's amended complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A, Chief Judge Suddaby concluded that plaintiff had plausibly alleged that all of the defendants, with the exception of defendant John Doe, violated his religious rights under the First Amendment and the RLUIPA, and denied him equal protection in violation of the Fourteenth Amendment.[5] Dkt. No. 14.

In lieu of answering plaintiff's amended complaint, defendants now

---

[5]    In his decision, Chief Judge Suddaby dismissed plaintiff's damages claim against defendants in their official capacities, and all monetary damage claims under the RLUIPA. Dkt. No. 14 at 9.

7

move seeking the entry of summary judgment, dismissing plaintiff's claims.[6]

Dkt. No. 23. In that motion, which was filed on June 1, 2018, defendants

assert that plaintiff's claims are procedurally barred based upon his failure to

file and pursue to completion an internal grievance regarding the matters

now at issue before commencing suit. *Id.* Plaintiff responded in opposition to

defendants' motion on June 18, 2018, Dkt. No. 28, and defendants have

since filed a reply in further support of their motion. Dkt. No. 31. Defendants'

motion, which is now ripe for a determination, has been referred to me for

the issuance of a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.

---

[6]    While a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure automatically extends the time under which a defendant must file an answer,
there is no parallel rule governing a defendant's obligation to answer a complaint when
he files a pre-answer motion for summary judgment pursuant to Rule 56. *Compare* Fed.
R. Civ. P. 12(a)(4) *with* Fed. R. Civ. P. 56; *see also* 10A Alan Wright *et al.*, *Federal
Practice & Procedure* § 2718 (4th ed.). Most courts have determined that Rule 12(a)(4)
operates by analogy to a defendant that has filed a pre-answer summary judgment
motion and, therefore, have declined to find a defendant in default by failing to file an
answer until after disposition of the motion. *See Rashidi v. Albright*, 818 F. Supp. 1354,
1356 (D. Nev. 1993) ("Although Rule 12 does not specifically allow for a summary
judgment motion to toll the running of the period within which a responsive pleading must
be filed, by analogy the language would seem to apply[.]"); *but see Poe v. Cristina
Copper Mines, Inc.*, 15 F.R.D. 85, 87 (D. Del. 1953) (finding that the "extension of time to
file a response pleading until determination of a motion for summary judgment is not a
definite and fixed right but a matter to be granted or denied under Rule 6(b)"). In this
instance, exercising my discretion, I will *sua sponte* order a stay of defendants' time to
answer plaintiff's complaint until fourteen days after a final determination is issued with
respect to the parties' motions, in the event that the action survives. *Snyder v. Goord*, 05-
CV-1284, 2007 WL 957530, at *5 (N.D.N.Y. Mar. 29, 2007) (McAvoy, J., *adopting report
and recommendation by* Peebles, M.J.).

R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Legal Standard Governing Summary Judgment Motions

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250

n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Exhaustion of Administrative Remedies

Defendants contend that plaintiff's claims in this action must be dismissed based upon his failure to fully exhaust his administrative remedies prior to commencement. Dkt. No. 23-4. In opposition, plaintiff counters that he fully exhausted his remedies by writing to, and receiving a response from defendant Annucci whom, plaintiff contends, has authority that "supercedes [sic] that of the Central Office Review Committee[.]" Dkt.

10

No. 28 at 2, 3, 5.

1.    Legal Standard

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his

claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[7] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

---

[7]     The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[8] 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii). Importantly, at this step, the superintendent or his designee shall determine if the grievance raises an issue that is departmental or institutional.[9] 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

If it is determined that the subject of the grievance implicates a departmental policy or directive, the superintendent is required to forward the grievance within seven calendar days of his receipt to the Central Office Review Committee ("CORC"), who is required to issue a decision in accordance with the third step. 7 N.Y.C.R.R. § 701.5(c)(3)(i). At the third and final step of the IGP, the CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

As can be seen, at each step of the IGP process, a decision must be

---

[8]      Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

[9]      The relevant regulations provide that a departmental grievance is "a grievance which affects an inmate during his/her confinement at various facilities throughout the department[,]" while an institutional grievance is "a grievance in which the grievant is only affected as long as he/she remains a resident of the facility in which the grievance is filed." 7 N.Y.C.R.R. § 701.2(b), (c).

rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859

14

(quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[10] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

2.     Analysis

In this case, plaintiff availed himself of the IGP and initiated the grievance process on May 3, 2017, by his letter which was deemed to

---

[10]     According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

15

represent a grievance. Dkt. No. 23-3 at 8. Before plaintiff received a

response from the IGRC at the first step of the IGP, *see* 7 N.Y.C.R.R. §

701.5(b), he commenced this action May 15, 2017. *See generally* Dkt. No.

1; *see also Taylor v. Racette*, 709 F. App'x. 105, 106 n.1 (2018). Thus, less

than two weeks elapsed between the filing of plaintiff's grievance and

commencement of this action.

   In opposition to the present motion, plaintiff effectively acknowledges

that he failed to complete the IGP process before filing suit. *Compare* Dkt.

No. 23-1 *with* Dkt. No. 28 at 8. He contends, however, that his failure should

be excused, claiming that because his letter to defendant Annucci

effectively acted to exhaust his remedies. This sort of circumvention of the

IGP has been consistently rejected by courts in this circuit under the PLRA.

*See e.g.*, *Hurst v. Mollnow*, No. 16-CV-1062, 2018 WL 4178226, *7 n.9

(N.D.N.Y. Jul. 20, 2018), *report and recommendation adopted by* 2018 WL

4153926 (N.D.N.Y. Aug. 30, 2018); *Chaney v. Vena*, No. 9:15-CV-653,

2017 WL 6756645, at *3 n.3 (N.D.N.Y. Nov. 29, 2017), *report and

recommendation adopted by* 2017 WL 6734186 (N.D.N.Y. Dec. 29, 2017);

*Rodriguez v. Cross*, No. 15-CV-1079, 2017 WL 2791063, *4 (N.D.N.Y. May

9, 2017), *report and recommendation adopted by* 2017 WL 2790530

(N.D.N.Y. June 27, 2017); *Geer v. Chapman*, No. 9:15-CV-952, 2016 WL

6091699, at *5 (N.D.N.Y. Sept. 26, 2016), *report and recommendation adopted by* 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016); *see Macias v. Zenk*, 495 F.3d 37, 44-45 (2d Cir. 2007) (informal steps, putting officials on "notice" are insufficient to exhaust administrative remedies).[11] Thus, plaintiff's informal letter, even to a high-ranking official such as defendant Annucci, is outside the purview of the IGP, and fails satisfy PLRA's exhaustion requirement. Accordingly, based upon the short period that elapsed between the date of plaintiff's grievance and his commencement of this action, as well plaintiff's clear post-commencement efforts to exhaust, I conclude that plaintiff failed to fully exhaust his administrative remedies before filing suit.

The only question to be resolved is whether the IGP was unavailable to plaintiff such that he may be excused from his failure to fully exhaust the administrative remedies.[12] *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1858). There is no evidence before the court that would suggest that

---

[11]     All unreported cases cited to in this report have been appended for the convenience of the *pro se* plaintiff.

[12]     Defendants represent to the court that because the "CORC is in the process of rendering a determination on the [p]laintiff's grievance"—a grievance that was filed by plaintiff nearly a year prior to their motion—plaintiff's "administrate remedies relating to his complaint of the absence of halal meals remain unexhausted." Dkt. No. 23-3 at 3. I am not convinced that this position would pass muster in the aftermath of *Williams*. *See also* 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

the IGP operated a "simple dead end," was "incapable of use," or that plaintiff's efforts were thwarted by "machination, misrepresentation, or intimidation." *Id.* To the contrary, the IGP remained fully available to plaintiff and he was able to successfully and timely navigate each step. After plaintiff received a denial from the IGRC at step one, he filed an appeal to the superintendent. Dkt. No. 23-3 at 8, 9. When the superintendent denied his grievance as being "departmental" in nature, although he was not required to, he also filed a timely appeal to the CORC. *Id.* at 10.

Accordingly, I find both that plaintiff did not fully comply with the IGP and that the procedures set forth in the IGP remained available to plaintiff at all times.

D.    Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to

allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this instance, the deficiencies identified in this report are substantive in nature and extend beyond the mere sufficiency of plaintiff's amended complaint. Accordingly, because I find that any amendment that might be offered by plaintiff would be futile, I recommend against granting plaintiff further leave to amend his complaint.

IV.   SUMMARY, ORDER, AND RECOMMENDATION

Based upon the record before the court, which firmly establishes that plaintiff failed to exhaust the prescribed grievance process before filing this action, and the lack of evidence showing that administrative remedies under

the IGP were unavailable to him at the relevant times, defendants' motion should be granted. Accordingly, it is hereby

ORDERED that the clerk of the court is respectfully directed to modify the court's records to change defendant Daniel Mortuscello's name on the docket to "Daniel Martuscello"; and it is further hereby

ORDERED, that defendants' time to answer or move against plaintiff's complaint in this action is extended until fourteen days after a final determination is issued with respect to defendants' motion, in the event that the action survives; and it is further respectfully

RECOMMENDED that defendants' motion for the entry of summary judgment dismissing plaintiff's complaint based on his failure to exhaust the available administrative remedies (Dkt. No. 23) be GRANTED in its entirety, and that plaintiff's amended complaint (Dkt. No. 13) be DISMISSED, without prejudice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[13]

---

[13]   If you are proceeding *pro se* and are served with this order, report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72;

*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this court's

local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:        November 7, 2018
              Syracuse, New York

---

legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 22 of 64

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John
Doe # 1, Parole Agent, Watertown Correctional
Facility; John Doe # 2, Parole Agent, Lincoln
Work Release Center; Susan Bishop, Director of
Interstate Compact, South Carolina; Cecil Magee,
Parole Officer, South Carolina; Frank Barton,
Parole Officer, South Carolina; John McMahan,
Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

## Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene,
Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General,
The Capitol Albany, NY, for defendants Peters, Herman
Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M.
Dvorin, Assistant Attorney General, Carl N. Lundberg,
Chief Legal Counsel, South Carolina Department of
Probation, Columbia, SC, for defendants Bishop, Magee,
Barton, McMahan, and Stanford, Carl N. Lundberg, of
Counsel.

## DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon,
Jr., duly filed on April 17, 1997. Following ten days from
the service thereof, the Clerk has sent me the entire file,
including any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983
civil rights action on November 17, 1995. On February
12, 1996, Magistrate Judge Scanlon ordered Brown to
submit an amended complaint alleging the specific acts
committed by the individuals named as defendants which
Brown claimed violated his constitutional rights. Brown
filed an amended complaint on March 21, 1996. In
his amended complaint, Brown alleged that defendants
violated his rights under the Eighth and Fourteenth
Amendments by failing to process properly his interstate
compact paperwork, resulting in Brown being imprisoned
pursuant to a parole hold when in fact he had never
violated the conditions of his parole. For a more complete
statement of Brown's claims, see his amended complaint.
Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant
to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2.
On August 19, 1996, defendants Bishop, Magee, Barton,
and McMahan made a motion to dismiss the complaint
against them or, in the alternative, for summary judgment.
Dkt. No. 20. On October 17, 1996, defendants Herman,
Stewart, and Stanford made a motion to dismiss for failure
to state a claim. Dkt. No 34. On April 17, 1996, Magistrate
Judge Scanlon recommended that all defendants' motions
to dismiss be granted and that the complaint be dismissed.
Dkt. No. 50.

On June 9, 1997, Brown filed objections to the magistrate
judge's report-recommendation, having been granted
additional time in which to do so. Dkt. No. 52. In addition,
Brown filed on June 9, 1997, a motion for leave to file a
second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last
motion filed, Brown's motion for leave to amend his
complaint a second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt.
No. 53. The district court has discretion whether to grant
leave to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d
129, 131 (2d Cir.1993). In exercising that discretion, the
court should freely grant leave to amend when justice so
requires. Fed.R.Civ.P. 15(a). However, the court need not
grant leave to amend where it appears that amendment

Brown v. Peters, Not Reported in F.Supp. (1997)
Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 23 of 64
1997 WL 599355

would prove to be unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

 **\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment

would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-

Brown v. Peters, Not Reported in F.Supp. (1997)
Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 24 of 64
1997 WL 599355

recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three

motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 25 of 64

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

*5 Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991)* (citing *Ortiz v. Cornette, 867 F.2d 146, 149 (1989)*). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc. 899 F.Supp. 1224, 1226 (S.D.N.Y.1995)*, (citing *Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)*). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988)*. The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994)*. As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 26 of 64

that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate

deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 27 of 64

1997 WL 599355

motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)* (citing *Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir.1989)*); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

## All Citations

Not Reported in F.Supp., 1997 WL 599355

---

Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 6756645
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nakia CHANEY, Plaintiff,
v.
Gregory M. VENA, et al., Defendants.

9:15-CV-653 (TJM/ATB)
|
Signed 11/29/2017

**Attorneys and Law Firms**

NAKIA CHANEY, pro se.

JUDITH B. AUMAND, ESQ., for defendants Vena and Bell.

JONATHAN M. BERNSTEIN, for defendant Dagostino.

**REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

*1 This matter has been referred to me for Report-Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In the relevant portion of plaintiff's civil rights complaint, he alleges that defendant D'Agostino refused to provide plaintiff with a suitable mattress to sleep on, while he was incarcerated in the Schenectady County Jail ("SCJ") from October 17, 2014 until May 22, 2015 in violation of his constitutional rights. (Complaint ("Compl.") at 10, 11-12). [1]

Presently before the court is a motion for summary judgment filed by Schenectady County Sheriff Dominick D'Agostino. (Dkt. No. 64). Plaintiff has responded in opposition to the motion, defendant D'Agostino has filed a reply, and plaintiff has filed what he has titled a "response" to defendant's memo of law. (Dkt. Nos. 67, 70, 71). For the following reasons, this court finds that the defendant's motion for summary judgment should be granted, and the complaint dismissed in its entirety as against defendant D'Agostino.

**I. Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Salahuddin v. Goord, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. Salahuddin v. Goord, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Salahuddin, 467 F.3d at 272.

**II. Exhaustion of Administrative Remedies**

**A. Legal Standards**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. See Giano v. Goord, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing Porter

*v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

**\*2** The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F.Supp.2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103, 126 S.Ct. 2378.

Grievance programs and procedures in *county* facilities are contained in the regulations governing the New York State Commission of Correction, appearing in the chapter entitled "Minimum Standards and Regulations for Management of County Jails and Penitentiaries," in the part specifically entitled "Grievance Program." N.Y. CODE RULES & REGS. tit.9, §§ 7032.1-7032.11. These regulations specifically provide that the chief administrative officer of the correctional facility shall establish and maintain a formal inmate grievance procedure. *Id.* § 7032.1. The regulations provide that the facility shall maintain grievance forms for the inmates to use and shall make those forms readily available to inmates. *Id.* §§ 7032.4(d), 7032.6. The regulations also provide that instructions for filing a grievance shall be included in the facility rules and regulations as required by section 7002.9(a)(15), and that "[e]ach inmate at any facility shall be advised in writing as to the availability of grievance forms upon admission." *Id.* § 7032.4(b), (c).

An inmate must file his grievance within five days of the date of the conduct giving rise to the complaint.

*Id.* § 7032.4(d). The chief administrative officer of the facility designates a staff member to act as a grievance coordinator, and the regulations provide that each grievance shall be fully investigated by an individual who was not personally involved in the circumstances giving rise to the grievance. *Id.* § 7032.4(e), (f). The regulations specify minimum requirements for the type of information that must be gathered during the investigation of the inmate's grievance. *Id.* § 7032.4 (g)(1)-(g)(4).

The grievance coordinator must issue a written decision within five business days, containing the "facts and reasons underlying the coordinator's determination," and a copy of the determination must be provided to the inmate. *Id.* at 7032.4(i). The plaintiff may appeal an adverse determination to the chief administrative officer or his designee within two business days of receiving the adverse determination. *Id.* § 7032.4 (j). The chief administrative officer renders a decision within five business days, and if the inmate is still not satisfied, he may appeal the adverse decision directly to the Commission of Correction within three business days. *Id.* §§ 7032.4(k), 7032.5.

**\*3** Within three business days after receiving the appeal from the inmate, the chief administrative officer of the facility must mail the appeal to the Commission's Citizens Policy and Complaint Review Council (CPCRC), and the grievance coordinator must provide the inmate with a receipt of mailing. *Id.* § 7032.5(c). The CPCRC has forty-five days within which to issue a written decision. *Id.* § 7032.5(d). In certain circumstances, inmates will be provided assistance at any stage of the proceedings. *Id.* § 7032.9. The chief administrative officer of the facility must keep a centralized record of all grievances, and facility employees are given an orientation on the grievance procedures. [2] *Id.* §§ 7032.10, 7032.11.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, ––– U.S. ––––, 136 S.Ct. 1850, 1857, 195 L.Ed.2d 117 (June 6, 2016). " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan*, 656 Fed.Appx. 577, 580 (2d Cir. 2016) (quoting *Ross*, ––– U.S. at ––––, 136 S.Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill*—availability and estoppel—are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, ––– U.S. at ––––, 136 S.Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See also Riles*, 656 Fed.Appx. at 580–81. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

**B. Application**

In this case, plaintiff concedes that he did not exhaust his administrative remedies. [3] At the time of his booking into SCJ, plaintiff was given the facility rule book, which contains the instructions for filing grievances. (Def.'s Exs. G, K) (Dkt. Nos. 64-8 at 4 (Booking Sheet), 64-12 at CM/ECF 24-26 (Rule Book) & Ex. M. (Lt. Josua Guerin Aff. ¶¶ 1-5) (Dkt. No. 64-14)). However, plaintiff argues that the Grievance Sergeant "refused to allow the plaintiff to file his grievance...." (Pl.'s Response to Summary Judgment ¶ 2) (Dkt. No. 67). In plaintiff's "Answer to Omnibus Discovery," plaintiff states that his grievance was "refused." (Dkt. No. 64-11 at 5). In the complaint, plaintiff states that he did not file a grievance because he "was repeatedly denied a grievance form because the grievance sergeant claimed another inmate already filed a grievance on [the] issue." (Compl. ¶ 4(b) at 3).

**\*4** In his response to the defendant's summary judgment motion, plaintiff now claims that he did not continue to request a grievance form because the sergeant's "tone" made it clear that he did not wish to continue to discuss the issue, and the sergeant allegedly told plaintiff that the next time he asked for a form, he would be locked in his cell. (Dkt. No. 67 ¶ 13). Plaintiff argues that he "exhausted"

his remedies "once he felt threatened by the grievance [sergeant], and "it was determined that plaintiff [would] not receive a grievance." (*Id.* ¶ 16).

Based on *Ross*, the court must now determine whether the grievance process was "available" to plaintiff, given the facts that he has stated. [4] Clearly, the process is technically "available" to plaintiff because there exists a mechanism to file grievances at SCJ. Defendants argue that plaintiff could have filed a grievance, even if one grievance sergeant refused to give plaintiff a grievance form because there are two sergeants in charge of the grievance process, and they work different shifts. The SCJ Inmate Rules and Regulations book confirms that there "is a [Grievance] Sergeant on both active shifts." (Def.'s Ex. J at CM/ECF p.26) (SCJ Rule Book at 34).

The fear of retaliation must be "reasonable" to render the grievance procedure "unavailable." *Harrison v. Stallone*, No. 9:06-CV-902, 2007 WL 2789473, at \*5 (N.D.N.Y. Sept. 24, 2007) (citing *Thomas v. Cassleberry*, No. 03-CV-6394, 2007 WL 1231485, at \*1-2, 2007 U.S. Dist. LEXIS 30129, at \*3-6 (W.D.N.Y. April 24, 2007)). Plaintiff's statement that the Sergeant's "tone" made plaintiff fear "retaliation," is not a "reasonable" fear of retaliation. If such an allegation rendered the process unavailable, it would be quite simple for inmates to circumvent the grievance procedure by making a conclusory statement that the officer's "tone" was aggressive or threatening. Thus, in itself, plaintiff's allegation that he felt "threatened" by the Sergeant's tone of voice does not excuse plaintiff from completing the grievance process. Plaintiff's claim that the sergeant vaguely threatened to lock plaintiff in "his" cell is also fails to rise to the level of a "reasonable" fear of retaliation. Inmates are always locked in their cells, and plaintiff does not allege that the sergeant made any other "threats" of physical harm or false charges to accompany that statement. Thus, plaintiff's fear of "retaliation" is insufficient to excuse the exhaustion requirement.

Plaintiff's other reason for failing to file a grievance requires more consideration. In his complaint, plaintiff claims that he was denied a grievance "form" because another inmate's grievance raising the mattress issue had been denied. (Compl. ¶ 4(b)). In his answers to defendant's interrogatories, plaintiff states that the Grievance Sergeant did not "accept" his grievance because the other inmate's grievance on the same issue had

been denied. (Dkt. No. 64-11 at 2) (Interrogatory Ans. Nos. 8-11). Plaintiff states that he complained to the officers on the unit and to a grievance sergeant whose names plaintiff does not remember. Plaintiff then states that he complained to Grievance Sergeant "Nick named Russia," [5] and then repeats that his grievance was not "accepted." (*Id.*)

**\*5** Defendants have attached a copy of the other inmate's grievance to their Reply. (Dkt. No. 70 Ex. A). A review of the grievance shows that in October of 2014, Inmate Tracy Hunter filed a grievance complaining about various issues, including the thickness of the mattresses upon which the inmates were required to sleep. (Dkt. No. 70-1 at 10). Inmate Hunter's grievance was investigated and denied at the facility level as well as by the CPCRC, "sustain[ing] the action taken by the facility administration." (Dkt. No. 70-1 at 3). The letter from the CPCRC is dated March 23, 2015. (*Id.*) The decision of Sergeant Greg Cufari, who signs as the Grievance Coordinator Schenectady County Sheriff's Department, states in relevant part, that Inmate Hunter complained about the mattresses at the facility because of a law suit "detailing the same complaint ... which is outlined in this grievance." (*Id.* at 4). Sergeant Cufari then states that Inmate Hunter had been at SCJ for almost one year before ever complaining about the mattresses, and it was Sergeant Cufari's opinion that "Inmate Hunter is attempting to follow the same frivolous suit for a quick pay day." (*Id.* at 5).

The SJC Inmate Rule Book states that if the Grievance Sergeant cannot resolve the inmate's problem "informally," after the inmate has discussed the issue with his Floor Officer and his supervisor, "and provided that [the] complaint is a grievable matter, a grievance form ***will be provided***." (Dkt. No. 64-12 at 26). After completing the form, the inmate returns the form to the Grievance Sergeant. [6] (*Id.*) It appears that providing the form to the inmate is the responsibility of the Grievance Sergeant, who also makes the determination of whether the problem is grievable.

While it is undisputed that a problem with plaintiff's mattress is a grievable issue, plaintiff claims that his grievance was not "accepted" because he was told that Inmate Hunter's grievance on the same issue had been denied. The court notes that the rationale for the denial of Inmate Hunter's mattress grievance lends itself to supporting plaintiff's allegations. If the officer who

investigated Inmate Hunter's grievance believed that the claim was "frivolous," and that the grievance was filed in response to an article that Inmate Hunter read about a law suit against another facility, then it is reasonable to assume that when plaintiff asked about filing a grievance relating to mattresses, [7] he could have been told that it would be futile to file the grievance. If the Grievance Sergeant refused to "accept" [8] such a grievance and denied plaintiff the grievance form, then it is arguable that administrative remedies were not "available" to the plaintiff in that situation. The same result was possible regardless of which grievance sergeant plaintiff asked.

**\*6** The court notes that very recently the Second Circuit has discussed an inmate's claim that administrative remedies were "unavailable" because he was in disciplinary housing and the officers refused to give him grievance forms. *See Kearney v. Gebo*, —— Fed.Appx. ——, 2017 WL 5256820 (2d Cir. Nov. 13, 2017). In *Kearney*, the court held that even if the officers refused to give the plaintiff grievance forms, the New York State regulations expressly allowed grievances to be filed on any kind of paper. Moreover, plaintiff Kearney had written letters of complaint to the Inspector General and to the Commission of Correction, showing that he had both paper and writing implements. *Id.* at ——, 2017 WL 5256820 at \*2. Thus, the court found that the grievance procedure was "available" to Kearney. *Id.*

This case is distinguishable from *Kearney* based on the evidence in the record. SCJ is a County Facility which has its own specific rules for filing grievances, [9] stated in its Rule Book, which rules are consistent with the New York Rules and Regulations cited above. The Grievance Sergeant makes the determination of whether the inmate's problem is "grievable," and only then, is the inmate given a grievance form to complete. The inmate must return the completed form to the Grievance Sergeant who is responsible for collecting the grievances and making the initial determination. (*See* Def.'s Ex. K, Rule Book at p.34) ("after completing the form, return it to a Grievance Sergeant.... Within five (5) days of the receipt of the grievance, ***the Grievance Sergeant shall issue a written determination.***" (emphasis added)).

If the Grievance Sergeant believed that plaintiff's complaint was "frivolous" because he was already aware of such a claim by Inmate Hunter, he may have refused

plaintiff's request for a grievance form and could have told plaintiff that such a claim was not acceptable because it had already been found to be frivolous and denied. Thus, whether the grievance was filed on a grievance form or if plaintiff had written it on any other sheet of paper, the Grievance Sergeant would still have been responsible for collecting the grievance and making the initial determination. [10] If the Grievance Sergeant refused to accept the grievance, the rules do not provide plaintiff with any other option for having the grievance heard.

This court is *not* making a finding that the Grievance Sergeant refused plaintiff's grievance or his attempt at obtaining forms to file the grievance. However, plaintiff's allegations and the evidence submitted show that there is a question of fact regarding the "availability" of administrative remedies for plaintiff's grievance. The question of whether plaintiff was misled or impeded by the Grievance Sergeant cannot be decided based on the documents submitted alone. Therefore, this court cannot recommend granting summary judgment in favor of defendant D'Agostino based upon a failure to exhaust.

## III. Personal Involvement

### A. Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

**\*7** A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.

1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F.Supp.2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F.Supp.2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at \*8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B. Application

Defendant D'Agostino has submitted an affidavit in which he states that he never created a policy or custom of providing inmates with inadequate mattresses. (D'Agostino Aff. ¶ 2). Defendant D'Agostino also states that "at no time" while plaintiff was incarcerated at SCJ in 2014 and 2015, was defendant D'Agostino aware that plaintiff did not receive a new mattress or that anyone denied plaintiff a new mattress. (*Id.* ¶ 3). Defendant D'Agostino states that he was not aware that plaintiff had any medical condition or other issue that would have warranted supplying plaintiff with a new mattress, and that the defendant "had no involvement in denying Plaintiff a new mattress or supplying Plaintiff with an alleged inadequate mattress." (*Id.*)

In his complaint, plaintiff alleges that he wrote letters to defendant D'Agostino, but he never received a response. (Compl. at 11-12). Plaintiff further states in his complaint that defendant D'Agostino "need[s]" to inspect the mattresses at his facility and provide mattresses that "he" would sleep on. (Compl. at 14). In his answer to the defendant's interrogatories, plaintiff states that he sent letters to defendant D'Agostino, but adds that he "had direct contact with [D']Agostino during his tour/walk through about the mattress and he told me to talk [to] the floor officer who directed me to the grievance sgt.[ ]...." (Def.'s Ex. J at p.2, ¶

5). In another document, entitled "Plaintiff's Answer to Omnibus Discovery," plaintiff states that he "spoke" with defendant D'Agostino "as Sgt. Nicknamed Russia refused to accept my grievance." (Def.'s Ex. J at p.3 ¶ 2). In his response to defendant's motion for summary judgment, plaintiff states that defendant D'Agostino should be "held accountable for all incidents within his facility." (Dkt. No. 67 ¶ 15).

Clearly, the plaintiff's statements, implying that defendant D'Agostino must be "held accountable" for the incidents in his facility merely restate the doctrine of respondeat superior, which is not applicable in section 1983 actions. Plaintiff's additional statement that defendant D'Agostino should be inspecting the mattresses at his facility to make sure that they are acceptable is also not sufficient to establish personal involvement by the Sheriff.

**\*8** Even if the court accepts the fact that defendant D'Agostino failed to respond to letters of complaint sent by plaintiff, this conduct alone would still be insufficient to establish personal involvement. *Thompson v. Pallito*, 949 F.Supp.2d 558, 575-76 (D. Vt. 2013) (citing cases). If merely writing an unanswered letter to a superior officer were sufficient to establish personal involvement, it would "contravene the black-letter principle that § 1983 does not allow for respondeat superior liability." *Id. See also Jones v. Rock*, No. 9:12-CV-447, 2013 WL 4804500, at \*16 (N.D.N.Y. Sept. 6, 2013) (letters to superior officers insufficient to establish personal involvement). *Cf. Guillon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), inmates who allege that they sent a complaint or grievance letter to a prison official are entitled to have the court draw that reasonable inference for *pleading purposes*).

Personal involvement will be found if the supervisory official "receives *and* acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Johnson v. Wright*, 234 F.Supp.2d 352, 363-64 (S.D.N.Y. 2002) (emphasis added) (citing inter alia *Ramos v. Artuz*, No. 00 Civ. 149, 2001 WL 840131, at \*8-10 (S.D.N.Y. July 25, 2001) (personal liability established where prison official "sent plaintiff numerous letters containing some explanation or justification concerning the issues raised by plaintiff")). In addition, personal involvement will be established if the official actually reviews plaintiff's "ongoing" grievance and fails to

"remedy the wrong." *See e.g. Sanchez v. Graham*, No. 9:12-CV-1646, 2016 WL 5854551, at \*7 (N.D.N.Y. Sept. 12, 2016), (Rep't-Rec.), adopted, 2016 WL 5852511 (N.D.N.Y. Oct. 6, 2016); *Young v. Choinski*, 15 F.Supp.3d 172, 192-93 (D. Conn. 2014) (citing inter alia *Vega v. Artus*, 610 F.Supp.2d 185, 198 (N.D.N.Y. 2009) (personal involvement established where an officer reviewed a grievance about an ongoing violation and the supervisor was authorized to remedy the violation directly)).

However, personal involvement will not exist if the superior officer receives a complaint, but delegates the response and/or investigation to a subordinate. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). In this case, plaintiff claims in his response to defendant's motion that he had "direct contact" with the Sheriff, and that defendant D'Agostino told plaintiff to speak with the floor officer. However, plaintiff has never alleged when this alleged conversation with D'Agostino took place, nor has he ever indicated when he wrote letters to the defendant. Plaintiff only alleges in his complaint that he wrote letters to defendant D'Agostino and had not received any response as of May 15, 2015—shortly before filing the instant complaint. (Compl. at p.12). Such vague allegations are insufficient to establish personal involvement. *See Guillory v. Cuomo*, 616 Fed.Appx. 12, 14 (2d Cir. 2015) (affirming sua sponte dismissal when plaintiff did not allege when and where the letters to defendant Cuomo were sent, what they said, or how they were sent).

Even assuming the truth of plaintiff's statement, defendant D'Agostino's alleged advice to plaintiff to address his issues to the floor officer, is equivalent to referring plaintiff's letter of complaint to a subordinate for investigation. The fact that defendant D'Agostino directed plaintiff to subordinates for obtaining relief does not create personal involvement in the alleged violation that plaintiff was attempting to remedy. *See Smith v. City of New York*, No. 14 Civ. 5927, 2017 WL 2172318, at \*8 (S.D.N.Y. May 16, 2017) (granting summary judgment based on a lack of personal involvement because "mere complaints made to supervisory defendants are not enough to establish supervisory liability) (citing *Faulk v. New York City Dep't of Corrections*, No. 08 Civ. 1668, 2014 WL 239708, at \*10 (S.D.N.Y. Jan. 21, 2014) (granting summary judgment where plaintiff alleged only that he spoke to the warden several times about his grievances)).

**\*9** Although plaintiff also states that he "spoke" with defendant D'Agostino, "as" the Sergeant refused to accept plaintiff's grievance, this statement is vague and to conflict with plaintiff prior statement in which he claims that when he spoke to defendant D'Agostino, the Sheriff told plaintiff to speak with the floor officer. (Def.'s Ex. J at 2-3). The fact that plaintiff may have spoken to defendant D'Agostino about his grievance is insufficient to show that defendant D'Agostino was personally involved in violating plaintiff's constitutional rights, given plaintiff's statement that D'Agostino told plaintiff how he needed to go about complaining about his mattress. *Faulk, supra.* Thus, this court finds that plaintiff has failed to allege the requisite personal involvement to sustain a section 1983 action against defendant D'Agostino. [11]

#### IV. Cross-Claims

Defendant D'Agostino has moved for dismissal of the cross-claims asserted by defendants Vena and Bell, Niskayuna Police Officers. (*See* Dkt. No. 23, ¶ 52). Defendants Vena and Bell allege that any injuries or damages sustained by plaintiff as a result of the incident described in plaintiff's complaint "were sustained in whole or in part by reason of the negligence and culpable conduct of the co-defendants." (*Id.*) Defendants Vena and Bell also seek apportionment of liability. (*Id.*)

Plaintiff has brought this claim pursuant to 42 U.S.C. § 1983, claiming that defendants violated his federal constitutional rights. [12] Section 1983 does not provide an express right to contribution or indemnification. *Taifer v. Catherines Stores Corp.*, No. 06 Civ. 2976, 2008 WL 7728651, at \*3 (S.D.N.Y. May 28, 2008) (citing *Carrion v. City of New York*, No. 01 Civ. 2255, 2002 WL 31107747, at \*3 (S.D.N.Y. Sept. 23, 2002) (citations omitted); *Hayden v. Hevesi*, No. 05-CV-0294E, 2007 WL 496369, at \*4 (W.D.N.Y. Feb. 12, 2007)). In addition, under New York law, indemnification is only available when there is either an express or implied agreement between the parties. *Id.*

In this case, defendant D'Agostino, Sheriff of Schenectady County was named as a defendant in connection with conditions of confinement at SCJ, while defendants Vena and Bell, Niskayuna Police Officers were named in connection with an allegedly unconstitutional search during plaintiff's arrest. (Compl. *generally*). The only remaining claim against defendant D'Agostino was in relation to his claimed denial of a constitutionally adequate mattress. This issue is completely unrelated to the claims against defendants Vena and Bell, and there is certainly no indication of any agreement with these unrelated officers, who do not even work for the same municipality. In addition, defendants Vena and Bell have failed to respond to defendant D'Agostino's motion, notwithstanding the great amount of time that has passed since its filing on June 1, 2017. Thus, the court can only assume that defendants Vena and Bell do not oppose dismissal of their frivolous cross-claims. Based on the law, and the failure of the defendants to oppose defendant D'Agostino motion, this court recommends that any cross-claims filed by defendants Vena and Bell be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant D'Agostino's motion for summary judgment (Dkt. No. 64) be **GRANTED**, and the complaint dismissed in its entirety as against defendant D'Agostino based on a lack of personal involvement, and it is

**RECOMMENDED**, that defendant D'Agostino's motion for summary judgment as relates to cross-claims filed by defendants Vena and Bell (Dkt. No. 64) be **GRANTED**, and any such cross-claims be **DISMISSED.**

**\*10** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

#### All Citations

Slip Copy, 2017 WL 6756645

Footnotes

2017 WL 6756645

1    The court will cite to the pages of the complaint as assigned by the court's electronic filing system—CM/ECF.

2    The regulations also provide that if an inmate is released or transferred to another facility prior to the resolution of a grievance, the chief administrative officer "shall cause a determination to be made on such grievance ...", and if the grievance is denied, the chief administrative officer "shall submit the grievance to the [CPCRC] as set forth in section 7032.5 of this Part." 9 NYCRR § 7032.7.

3    Although plaintiff states in his complaint that he wrote three letters to defendant D'Agostino, but received no reply, it is well-settled that writing letters to superior officers is not a substitute for proper exhaustion of administrative remedies, both before and after *Ross*. *See McCloud v. Tureglio*, No. 09:07-CV-650, 2008 WL 1772305, at *15 (N.D.N.Y. April 15, 2008) (complaint letters to prison officials did not satisfy exhaustion of grievance process); *Hall v. Bradley*, No. 12-CV-6202, 2015 WL 3964897, at *5 (W.D.N.Y. June 29, 2015) (neither letters to other DOCCS officials, nor conversations with prison officials about the incident satisfy the exhaustion requirement). *See also Rodriguez v. Cross*, No. 15-CV-1079, 2017 WL 2791063, at *4 (N.D.N.Y. May 9, 2017) (citing (inter alia *Geer v. Chapman*, No. 9:15-CV-952, 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016)), (Rep't-Rec.), *adopted*, 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies.")).

4    As stated above, "estoppel" based on official action impeding exhaustion, is now part of the "availability" analysis. Therefore, the court will consider both of plaintiff's reasons to excuse his failure to exhaust under the umbrella of "availability."

5    The court assumes that plaintiff intends to say that the sergeant was "nicknamed" Russia.

6    In his response to the defendant's motion, plaintiff states that "all grievances are types [sic] up by the grievance sgt. If he decides to give an inmate a grievance at his discretion." (Dkt. No. 67 ¶ 10). The rules are contrary to plaintiff's statement, as is the grievance filed by Inmate Hunter. The Rule Book states that inmates obtain the grievance form from the sergeant, but the inmate completes the form and returns it to the sergeant. Inmate Hunter's grievance is clearly handwritten. (Dkt. No. 70-1 at 6-10). In fact, the form states that it is to be "*(Completed by the grievant)*." (*Id.* at 6) (Italics in original). Plaintiff's apparent inaccuracy or "embellishment" does not change this court's opinion regarding exhaustion.

7    Since the rules specify that an inmate must explain what he wants to grieve so that the Grievance Sergeant can make the determination whether the problem is "grievable," then plaintiff would have to tell the Grievance Sergeant that he wished to file a grievance about his mattress before the Grievance Sergeant gave plaintiff the grievance form.

8    Plaintiff uses the words "accept" and "denied," when it is clear that he did not write a grievance. In addition, if the grievance sergeant did not give plaintiff the form, and no grievance was filed, then the grievance was not "denied." However, this court has interpreted plaintiff's statements to mean that he was denied the opportunity to write and file a grievance by the sergeant.

9    New York State Correctional Facilities are governed by Title 7 of the NYCRR, while County Jails are governed by Title 9 of the NYCRR.

10   The rules also provide that the Grievance Sergeant first attempts to resolve "the problem informally." (Def.'s Ex. K, Rule Book at 34). The rules leave the inmate's grievance completely in the hands of the Grievance Sergeant.

11   Because I have found a lack of personal involvement by defendant D'Agostino, I need not address defendant's claim of qualified immunity.

12   Plaintiff briefly mentions the New York State Constitution, but the case is essentially brought under section 1983.

2017 WL 6734186
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Nakia CHANEY, Plaintiff,
v.
Gregory M. VENA, et al., Defendants

9:15-CV-653 (TJM/ATB)
|
Signed 12/28/2017
|
Filed 12/29/2017

**Attorneys and Law Firms**

Nakia Chaney, Schnenectady, NY, pro se.

Judith B. Aumand, Burke, Scolamiero Law Firm,
Jonathan M. Bernstein, Chelsea E. Manocchi, Goldberg,
Segalla Law Firm, Albany, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District
Judge

**I. INTRODUCTION**

**\*1** This pro se action brought pursuant to 42 U.S.C.
§ 1983 was referred to the Hon. Andrew T. Baxter,
United States Magistrate Judge, for a Report and
Recommendation pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c). In his Report-Recommendation dated
November 29, 2017 (Dkt. No. 92), Magistrate Judge
Baxter recommends: (1) that defendant D'Agostino's
motion for summary judgment (Dkt. No. 64) be granted,
and the complaint dismissed in its entirety as against
defendant D'Agostino based on a lack of personal
involvement, and (2) that defendant D'Agostino's motion
for summary judgment as relates to cross-claims filed by
defendants Vena and Bell (Dkt. No. 64) be granted, and
any such cross-claims be dismissed. No objections to the
Report-Recommendation have been filed, and the time to
do so has expired.

**II. DISCUSSION**
After examining the record, this Court has determined
that the Report-Recommendation is not subject to attack
for plain error or manifest injustice.

**III. CONCLUSION**
Accordingly, the Court **ACCEPTS** the Report-
Recommendation (Dkt. No. 92) for the reasons stated
therein. Defendant D'Agostino's motion for summary
judgment (Dkt. No. 64) is **GRANTED**, and the complaint
is **DISMISSED** in its entirety as against defendant
D'Agostino. Further, defendant D'Agostino's motion for
summary judgment as relates to cross-claims filed by
defendants Vena and Bell (Dkt. No. 64) is **GRANTED**,
and any such cross-claims are **DISMISSED**.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2017 WL 6734186

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6091699
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Pakenauth Geer, Plaintiff,

v.

Officer Chapman, et al., Defendants.

9:15-CV-952 (GLS/ATB)
|
Signed 09/26/2016

**Attorneys and Law Firms**

PAKENAUTH GEER, Plaintiff pro se.

MICHAEL G. McCARTIN, Asst. Attorney General for Defendants.

## REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). Plaintiff originally filed this action in the Eastern District of New York, against several defendants, alleging violations of his constitutional rights. (Dkt. No. 1, 4). On June 29, 2015, the Honorable Carol Bagley Amon, Chief Judge in the Eastern District of New York found that the complaint did not state a claim for various reasons.[1] (Dkt. No. 5). Chief Judge Amon dismissed without prejudice to plaintiff filing an amended complaint only with respect to his First Amendment retaliation claim. (*Id.*)

On July 22, 2015, the Pro Se Office in the Eastern District of New York received plaintiff's proposed amended complaint. (Dkt. No. 6). The proposed amended complaint alleged that plaintiff's typewriter was "smashed" by defendants Chapman, McFarren, and McMillan. (Dkt. No. 6 at 1). On July 29, 2015, after reviewing the complaint for sufficiency, Chief Judge Amon transferred plaintiff's amended complaint to the Northern District of New York. (Dkt. No. 8). Chief Judge Amon found that "[s]pecifically, he claims that defendant corrections officers, who he alleges are employed at

Washington Correctional Facility, took adverse action against him because he has filed lawsuits against other officers and prison officials. (*Id.* at 1). Chief Judge Amon also found that the events of which plaintiff complained took place in the Northern District of New York. (*Id.* at 2). Thus, venue was improper in the Eastern District, and the case was transferred to the Northern District of New York "in the interest of justice." (*Id.* at 1-3).

On July 30, 2015, prior to the transfer,[2] plaintiff filed a motion to amend the amended complaint. (Dkt. No. 9). On October 14, 2015, the Honorable Gary L. Sharpe, reviewed plaintiff's submissions, including the first amended complaint and plaintiff's newly filed motion to amend. (Dkt. No. 14). Judge Sharpe interpreted plaintiff's first amended complaint as alleging 1) harassment; 2) wrongful destruction of personal property; 3) First Amendment retaliation; and 4) First Amendment denial of access to courts. (Dkt. No. 14 at 5).

Judge Sharpe dismissed plaintiff's first, second, and fourth claims. (Dkt. No. 14 at 6-11). Plaintiff's first and second claims were denied on the merits and on the basis of res judicata because plaintiff brought the same claims in a previously dismissed Northern District of New York action. *Geer v. McFarren*, No. 9:14-CV-0589, Dkt. No. 1. Judge Sharpe noted that plaintiff brought his retaliation claim in 14-CV-589, but that claim had been dismissed "without prejudice." (Dkt. No. 14 at 7, n.7). Judge Sharpe denied plaintiff's motion to amend. (*Id.* at 11-12). Thus, the only remaining claim in this action is that defendants Chapman, McFarren, and McMillan destroyed plaintiff's typewriter in retaliation for plaintiff filing lawsuits against other corrections officers and prison officials as stated in the first amended complaint (Dkt. No. 6).[3] (Dkt. No. 14 at 9).

**\*2** Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 23). Plaintiff has not responded to the motion, notwithstanding two notices from the court of his response deadline.[4] (Dkt. Nos. 24, 25). For the following reasons, this court agrees with defendants and will recommend dismissal of the amended complaint.

## DISCUSSION

## I. Facts

Plaintiff alleges that on April 26, 2014, Officers Chapman and McMillan "ordered" Officer McFarren to smash plaintiff's typewriter at the end of Officer McFarren's "count." (Amended Complaint ("AC") at 1). Plaintiff claims that this "order" was issued because plaintiff "filed lawsuits against many officers and officials." (*Id.*) The second page of the amended complaint appears to be a June 13, 2014 letter that plaintiff wrote to Attorney General ("AG") Eric Schneiderman, in which plaintiff mentions that the defendants broke his typewriter, [5] but essentially complains about subsequent events. Plaintiff states that he ordered another typewriter, which allegedly arrived at the facility on June 13, 2014. [6] However, in his letter to AG Schneiderman, plaintiff claims that unnamed officials refused to allow him to pick up the package, even after he was notified of its arrival. (*Id.*)

## II. <u>Summary Judgment</u>

**\*3** Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56*; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the

movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III. <u>Exhaustion of Administrative Remedies</u>

### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that

the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8.

**\*4** Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857) (2016). " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan*, No. 15-3336-pr, 2016 WL 4572321, at *2 (2d Cir. Sept. 1, 2016) (quoting *Ross*, ___ U.S. at ___, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, ___ U.S. at ___, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See Riles*, 2016 WL 4572321 at *2. An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, ___ U.S. at ___, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, ___ U.S. at ___, 136 S. Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860.

**B. Application**

Defendants argue that plaintiff has failed to exhaust his administrative remedies with respect to his First Amendment retaliation claim. Defendants state that plaintiff failed to grieve the retaliation claim through the DOCCS three-level grievance mechanism. (Def.s' Mem of Law at 3-7). Defendants have filed the declaration of Karen Bellamy, the Director of the Inmate Grievance Program for the Department of Corrections and Community Supervision ("DOCCS"). (Bellamy Decl. ¶ 1) (Dkt. No. 23-2). Director Bellamy states that she has searched the CORC records to determine whether plaintiff ever filed a grievance appeal to the CORC relating to the destruction of plaintiff's typewriter at Washington in April of 2014. (Bellamy Decl. ¶ 2). Director Bellamy declares that there are no such appeals. (*Id.*) She has attached as Exhibit A to her declaration a computer print-out listing the one CORC appeal filed by plaintiff, which is not related to the retaliation issue that he raises in this amended complaint. (Bellamy Decl. ¶ 3 & Ex A). According to the computer print-out, on June 21, 2013, plaintiff filed a grievance complaining that his legal mail was not sent out. (Bellamy Decl. Ex. A at 1). The CORC appeal was decided on January 22, 2014. (*Id.*) It is the only grievance appeal brought by plaintiff that appears on the CORC list of closed cases. (*Id.*)

**\*5** Plaintiff was deposed on February 12, 2016 at Washington Correctional Facility. (Pl.'s Dep.) (Dkt. No. 23-5). At his deposition, plaintiff testified that he wrote letters to the grievance committee, the Attorney General,

Geer v. Chapman, Not Reported in F.Supp.3d (2016)
Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 40 of 64
2016 WL 6091699

and the Superintendent, but that was "the extent" of his exhaustion. (Pl.'s Dep. at 44-45). Plaintiff testified that he did not write to anyone else because a previous grievance was denied, and when he wrote to the CORC, "they sent me back to them so I say I have wasted my time." (*Id.* at 46). Defense counsel asked:

> Q. You are describing a situation in which you wrote to the Central Office?
>
> A. Yes.
>
> Q. But that was about a different matter not about the typewriter?
>
> A. Yes. I didn't write to them about this, because it's going to be the same. They're going to say I have to put it through a grievance and I have to put it through the superintendent and they don't answer. They won't answer.

(Pl.'s Dep. at 46). It is clear that plaintiff did not file a grievance [7] or appeal it properly because he did not think that he was going to get results, because he filed a previous grievance that was denied. He believed that doing so would be a "waste of time." He believed that he would not get an answer, but had no basis for that statement. The fact that his legal mail grievance was denied at the CORC level did not justify plaintiff's failure to exhaust his retaliation grievance or any other grievance that he may have had. It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies. *See Macias v. Zenk*, 495 F.3d 37, 44-45 (2d Cir. 2007) (informal steps, putting officials on "notice" are insufficient to exhaust administrative remedies); *Gizewski v. NY DOCCS*, No. 9:14-CV-124, 2016 WL 3661434, at *14 (N.D.N.Y. July 5, 2016) (notice through informal channels, including verbal complaints, is insufficient to exhaust administrative remedies).

As stated above, attached to the complaint, there is a letter that plaintiff "wrote" to the Attorney General on June 13, 2014, stating that the letter was "another" notice

of intention to file a claim. (AC at 2). The letter is in reference to the subsequent typewriter incident, and also states that plaintiff has already filed a lawsuit about the broken typewriter. [8] (*Id.*)

This is not a situation in which the administrative procedure was "unavailable" as discussed in *Ross, supra*. The grievance procedure was not complex. Plaintiff was not moved from Washington until long after the incident. Plaintiff was well-aware of how to bring a proper grievance because he had at least one previous grievance that was appealed to the CORC. Finally, there is no claim that the defendants prevented him from filing a grievance regarding the incident. Plaintiff's belief that bringing a grievance would be a waste of his time because it would be denied, or his unfounded belief that "they" would not answer, is not sufficient to justify his failure to exhaust. Thus, plaintiff has failed to exhaust his administrative remedies, and the complaint may be dismissed on that basis.

**\*6 WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 23) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 26, 2016.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 6091699

Footnotes

1    Chief Judge Amon found that some of plaintiff's claims were barred by res judicata, and in addition, his property claims
     could not be brought in federal court. (Dkt. No. 5 at 3-4, 5-6). Chief Judge Amon also found that plaintiff's claim for
     retaliation failed to state a claim. (Dkt. No. 5 at 4-5).

2016 WL 6091699

2    Although the transfer order was signed on July 29, 2015 (Dkt. No. 8), the case was electronically transferred on August 5, 2015. (Dkt. No. 10).

3    The operative pleading is Dkt. No. 6.

4    On June 23, 2016, plaintiff filed a letter, complaining that, because defense counsel had failed to include an "errata sheet" with his motion, plaintiff could not respond to the motion for summary judgment. (Dkt. No. 26). Plaintiff apparently believed that defendants were required to file such a "sheet" because an "errata sheet" was sent with the transcript of plaintiff's deposition. (Dkt. No. 26). When plaintiff received his copy of his deposition, he appears to have utilized the errata sheet to make arguments about the merits of the action while citing to specific pages of the deposition. Defense counsel responded to plaintiff's allegations, and on June 28, 2016, I issued a Text Order, informing plaintiff that defendants did produce an errata sheet with their deposition transcript. I directed the Clerk to send plaintiff a copy of the errata sheet, but denied plaintiff's "request" that defendants produce another "errata sheet" before plaintiff responded to the summary judgment motion. My June 28, 2016 Text Order was "returned undeliverable" because plaintiff had been released to the Buffalo Federal Detention Center. (Dkt. No. 29). Plaintiff ultimately filed a change of address, indicating that he had been moved to the Federal Detention Center. (Dkt. No. 30). The court sent the Text Order to plaintiff's new address, but plaintiff still failed to respond to the summary judgment motion. (Dkt. No. 31).

5    The letter states that it was "another notice of intention to file a claim, in which my typewriter are [sic] broken by officer McFarren and I've filed a lawsuit for my broken typewriter; so now I've order another typewriter from Union Supply Direct ...." (AC at 2).

6    It appears that plaintiff wrote the letter to the Attorney General on the same day that he was allegedly prevented from obtaining the new typewriter from the package room. The letter also states that the typewriter was "shipped" on June 13, 2014, which is not possible if it arrived on June 13, 2014 and plaintiff wrote the letter on June 13, 2014. However, the court finds that plaintiff may have written the incorrect date or he has interpreted "shipping" as "arriving."

7    During his deposition, plaintiff stated that, before he wrote to the Attorney General, he "wrote" to the superintendent and the grievance committee. (Pl.'s Dep. at 44). Plaintiff stated that he knew they would not respond.

8    Plaintiff may be referring to the lawsuit that he brought in 2014 regarding the broken typewriter that was mentioned by Judge Sharpe in his October 14, 2015 order in this case. *Geer v. McFarren*, No. 9:14-CV-589 (DNH/TWD). The court notes that the complaint in 14-CV-589 states that he filed a grievance with the grievance committee and the superintendent. He also alleged that he sent the complaint to the CORC, but no action was taken. As shown herein, there was no appeal to the CORC of any grievance filed by plaintiff, relating to his claims in this case.

---

End of Document                                                               © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6090874
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Pakenauth Geer, Plaintiff,

v.

Officer Chapman et al., Defendants.

9:15-cv-952 (GLS/ATB)
|
Signed 10/18/2016

**Attorneys and Law Firms**

FOR THE PLAINTIFF: PAKENAUTH GEER, 05-A-1952, BUFFALO FEDERAL DETENTION FACILITY, 4250 Federal Drive, Batavia, New York 14020.

FOR THE DEFENDANTS: HON. ERIC T. SCHNEIDERMAN, New York State Attorney General, The Capitol, OF COUNSEL: MICHAEL G. MCCARTIN, Assistant Attorney General, Albany, New York 12224.

**ORDER**

Gary L. Sharpe, Senior District Judge

**\*1** The above-captioned matter comes to this court following an Report-Recommendation by Magistrate Judge Andrew T. Baxter, duly filed on September 26, 2016. (Dkt. No. 32.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the Report-Recommendation for clear error, it is hereby

**ORDERED** that the Report-Recommendation (Dkt. No. 32) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 23) be **GRANTED**; and it is further

**ORDERED** that the plaintiff's amended complaint, (Dkt. No. 6), is **DISMISSED IN ITS ENTIRETY**; and it is further

**ORDERED** that the Clerk is directed to close the case; and it is further

**ORDERED** that the clerk of the court serve a copy of this order upon the parties in accordance with this court's Local Rules.

**IT IS SO ORDERED.**

October 18, 2016.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 6090874

2018 WL 4178226
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Keith I. HURST, Plaintiff,
v.
A. MOLLNOW and Eisenschmidt, Defendants.

9:16-cv-1062 (DNH/TWD)
|
Signed 07/20/2018

**Attorneys and Law Firms**

KEITH I. HURST, 105 Hunter Ave., #2, Albany, NY 12206, pro se.

BARBARA D. UNDERWOOD, OF COUNSEL: MARK G. MITCHELL, ESQ., Attorney General of the State of New York, The Capitol, Albany, NY 12224, Attorney for Defendants.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

*1 This matter was referred for Report and Recommendation by the Hon. David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule ("L.R.") 72.3(c). *Pro se* Plaintiff Keith I. Hurst, a former inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), has commenced this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights while confined at Washington Correctional Facility ("Washington"). (Dkt. No. 1.) The sole remaining claim is Plaintiff's Eighth Amendment excessive force claim against Defendants A. Mollnow, a Corrections Officer ("C.O.") and Eisenschmidt, a Sergeant ("Sgt."). (Dkt. No. 12.)

Presently pending is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dkt. No. 41) for Plaintiff's failure to exhaust administrative remedies before commencing

this action. (Dkt. No. 41-11 at 6-13.[1]) Defendants also contend, to the extent Plaintiff's seeks monetary damages against them in their official capacities, they are entitled to Eleventh Amendment immunity. (Dkt. No. 41-11 at 13.) Plaintiff filed a response in opposition to Defendants' motion. (Dkt. No. 57.) Defendants filed a reply. (Dkt. No. 60.) For reasons that follow, the Court recommends that Defendants' motion for summary judgment (Dkt. No. 41) be granted in part and denied in part.

**II. BACKGROUND**

**A. July 1, 2016, Incident**

Plaintiff alleges that on July 1, 2016, while an inmate at Washington, he was subjected to excessive force by C.O. Mollnow and Sgt. Eisenschmidt. (Dkt. No. 1 at 4-5.) On that date, Plaintiff claims he requested to speak to an "area supervisor" regarding his keeplock status. *Id.* at 4-5. In response, C.O. Mollnow "pulled the pin on her walkie talkie" and several officers, including Sgt. Eisenschmidt responded. *Id.* The officers physically assaulted Plaintiff, inflicting numerous injuries, while hurling racial epithets at him. *Id.* Specifically, C.O. Mollnow kicked Plaintiff in the left side of his face and spit on him while he was on the ground. (Dkt. Nos. 1 at 5, 41-2 at 86-88.) Sgt. Eisenschmidt punched Plaintiff in the head, face, and chest, banged his head into the wall, and choked him. (Dkt. Nos. 1 at 5, 41-2 at 157.) The assault lasted approximately ten minutes. (Dkt. No. 41-2 at 98-100.) Afterwards, Plaintiff was taken by bus to Sgt. Eisenschmidt's office. *Id.* There, Sgt. Eisenschmidt punched, kicked, and choked Plaintiff, and slammed his head against a wall. *Id.* at 103-104. Plaintiff was then sent to the Special Housing Unit ("SHU"). *Id.*

**B. Plaintiff's Inmate Misbehavior Reports**

On July 1, 2016, C.O. Mollnow issued Plaintiff two inmate misbehavior reports for creating a disturbance, harassment, refusing a direct order, making threats, and being out of place. (Dkt. No. 1 at 9, 11-12.) As described in those misbehavior reports, at approximately 1:00 p.m., Plaintiff was "cube visiting" without permission. (Dkt. No. 41-4 at 5.) When C.O. Mollnow told Plaintiff that he was not allowed to cube visit, Plaintiff yelled, "fuck you" and returned to his cube. *Id.* At Sgt. Eisenschmidt's direction, C.O. Mollnow told Plaintiff he was keeplocked. *Id.* Plaintiff argued with C.O. Mollnow about his keeplock status, but returned to his cube. *Id.* At approximately

1:20 p.m., Plaintiff approached C.O. Mollnow's desk and resumed arguing about his keeplock status. *Id.* at 6. C.O. Mollnow ordered Plaintiff to leave the desk and return to his cube. *Id.* Plaintiff stepped onto the officer's podium in a threatening manner. *Id.* C.O. Mollnow activated her alarm; Plaintiff ran to his cube. *Id.* A response team arrived; Plaintiff was sent to the SHU. *Id.* No physical force was used in the incident. *Id.* at 5, 6.

**\*2** At two Tier III disciplinary hearings conducted on July 11, 2016, Plaintiff pleaded guilty to two counts of creating a disturbance and was found guilty of all other charges. *Id.* at 7; Dkt. No. 41-2 at 122, 125. He was sentenced to 90 days in the SHU, 90 days loss of recreation, and 90 days loss of good time credits, along with 120 days loss of package, commissary, and telephone privileges. (Dkt. No. 41-2 at 126.) The hearing officer's determinations were affirmed on administrative appeal. (Dkt. No. 41-6 at 1.) On July 15, 2016, Plaintiff was transferred to Upstate Correctional Facility ("Upstate"). (Dkt. No. 41-2 at 142.)

### C. Plaintiff's Grievance

In his verified complaint, [2] Plaintiff declares, "I exhausted all of my administrative remedies, grievance, commissioner, governor, inspector general, special litigation of Washington, D.C." (Dkt. No. 1 at 2.) Plaintiff further states, "I filed grievances to the higher authority & never received a response. The facility of Washington never responded to my grievance." *Id.* at 3.

At his deposition, Plaintiff testified that on or about July 14, 2016, while confined in the SHU at Washington, he filed a grievance with Inmate Grievance Resolution Committee ("IGRC") regarding the July 1, 2016, assault:

Q: Did you file an inmate grievance with the IGRC about the incident on July 1, 2016?

A: Yeah.

Q: You did? On what date?

A: July 14th or 13th. It was the -- it was before they packed me up.

Q: And that was at Washington Correctional?

A: Yeah.

Q: All right. Where did you put the grievance?

A: In the mailbox.

Q: What did the grievance say?

A: It was on a -- it was on a regular piece of paper and it says that I was assaulted July 1st by several officers and -- the sergeant.

Q: What else?

A: I don't remember what it says.

Q: All right. And you put that in the mailbox at Washington?

A: Yeah. I know it was about my -- the assault.

(Dkt. No. 41-2 at 141.) The next day, on or about July 15, 2016, Plaintiff was transferred to Upstate. *Id.* at 142. Plaintiff testified he never received a response to his grievance that he filed at Washington:

Q: Did you get a response to that [grievance]?

A: I never got a response from it. I contacted the Upstate box -- Inmate Grievance Program to make sure they got my grievance and they said that they never had received it.

Q: All right. So, you put -- you put this grievance in the mailbox at Washington. And then you were transferred to a different facility?

A: Yes, sir.

Q: What date?

A: On the 15th or 16th. I think it was July 15th, when I was transferred out of -- out of there.

Q: Where did you go?

A: Upstate Correctional Facility.

*Id.* Plaintiff further explained, "I filed a grievance on [the July 1, 2016, assault] and they made it disappear. They said they never got it. I wrote a grievance...." *Id.* at 93-94. Plaintiff testified he wrote the Commissioner, the Governor, and Special Litigations. *Id.* at 94. He "wrote everybody that [ ] could consider a grievance." *Id.*

For example, by letter dated August 14, 2016, Plaintiff sent a letter to the Commissioner, regarding the July 1, 2016, incident:

> I was assaulted by several officers, including a sergeant. I was called racial slurs & repeatedly kicked & punched. The female officer even kicked me in the face, causing my left eye to become blurry & spit on me. They assaulted me for a very long time.... I was beaten on the bus, then I was assaulted in the Sergeant office. He choked me & started banging my head into wall." ... The Sergeant name is "Eisenschmidt" and the female office name is "A. Mollnow.... She also lied on the misbehavior report. I am not letting them get away with this & they should be placed under investigation.... Still heard no response from Inmate Grievance—dated 7.14.16. I hope you could look into this matter & save me from doing unnecessary box time. Do your job.

**\*3** (Dkt. No. 1 at 6.)

Plaintiff testified that he also contacted Upstate's IGRC regarding the status of his grievance:

> Q: What response did you get?
>
> A: That Washington never received no grievances from Hurst.
>
> Q: Did you do an appeal to the superintendent?
>
> A: No -- I don't recall. I don't know. I know I -- I filed my grievance with Albany and the Governor.
>
> Q: So, you sent some letters to the Governor?
>
> A: Yeah. To back up the grievance.
>
> Q: All right. And when you say Albany, what do you mean?
>
> A: The Commissioner and I --.
>
> Q: All right. So, you wrote to the Commissioner and you wrote to the Governor?
>
> A: And I wrote the Inspector General and he came about five months later to see me.

(Dkt. No. 41-2 at 143.) Plaintiff admitted he never appealed to the Central Office Review Committee ("CORC"):

> Q: Did you appeal to the Central Office Review Committee?
>
> A: I'm saying, if they never received it, how could I appeal it?

*Id.* at 144-45.

During his deposition, Plaintiff confirmed that he never filed a grievance at Upstate regarding the July 1, 2016, incident:

> Q: How about when you -- when you got to Upstate on July 15, 2016, did you try putting a grievance in -- filing a grievance there about --
>
> A: No.
>
> Q: -- what had happened at Washington?
>
> A: No. Because I thought it -- my grievance had already -- I thought they already had it. I thought they received it. But after like a month of not hearing nothing from them, I decided to take it upon myself to respond to Upstate grievances, to respond to them because you can't send mail out like that. You got it do it through the Grievance Program.
>
> Q: All right. Am I correct though you could of filed a grievance at Upstate, about something that happened at Washington? Correct?
>
> A: Yes. Because it was -- it was less than twenty-one days that it occurred.
>
> Q: All right. But you didn't -- you didn't do that?
>
> A: No. Because I already did it.
>
> Q: Okay. Do you have a copy of the grievance that you say you filed on July 13 or July 14?
>
> A: No. If I had carbon paper I would of made one, but I didn't have no carbon paper. Usually I do that, but I didn't have carbon paper at the time.
>
> Q: Do you have written proof that you -- you filed that grievance?
>
> A: No. Oh, yeah.
>
> Q: What?

A: I have written proof that I wrote to Albany -- Upstate Inmate Grievance, asking about that grievance and they wrote --

Q: Okay.

A: -- me back saying that they going to contact Washington Correctional Facility and they going to contact me, when they get a response. And when they got a response, they saying that Washington never received a -- a grievance.

*Id.* at 145-47. Plaintiff confirmed he sent a letter to Upstate regarding his grievance:

Q: You're saying that there was a letter from you to Upstate and you said something to the effect, what happened to my grievance at Washington?

A: Yes.

Q: And you said that Upstate wrote back and said we'll look into it?

A: Yeah.

Q: And then eventually, Upstate said there -- nothing was filed?

A: Yeah.

*Id.* at 149. [3]

**\*4** Defendants have submitted evidence in support of their motion establishing Washington has no record of any grievance filed by Plaintiff regarding the alleged July 1, 2016, incident. (Dkt. No. 41-9 at 2-3.) Matthew L. Waters, Inmate Grievance Program ("IGP") Supervisor, is one of the individuals responsible for keeping records of the grievances filed by inmates at Washington. *Id.* at 2. In his declaration, Waters explains he searched the IGP files to determine if Plaintiff filed any grievance at Washington relating to the alleged July 1, 2016, incident. *Id.* Based upon his search, Waters determined Washington has no record of any grievance filed by Plaintiff relating to any issue connected to the alleged use of excessive force incident at Washington in July 2016. *Id.* at 2-3.

Defendants have also submitted evidence establishing CORC has no record of an appeal relating to the alleged July 1, 2016, assault. (Dkt. No. 41-8 at 1-2.) Rachel

Seguin is the Assistant Director of the DOCCS IGP. *Id.* at 1. In that capacity, she is the custodian of the records maintained by CORC, which is the body that renders final administrative decisions under DOCCS' three-step IGP. *Id.* In her declaration, Seguin explains she searched CORC records and, based upon her search, determined Plaintiff did not file a grievance appeal with CORC related to any issue involving an alleged use of excessive force incident at Washington in July 2016. *Id.* Seguin has attached a computer printout showing that the only CORC appeal filed by Plaintiff was in 2015, concerning an incident at Downstate, and that there are currently no active CORC appeals pending for Plaintiff. *Id.* at 2.

### III. APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] ... may rely only on admissible evidence.") (citation and internal quotation

marks omitted). A plaintiff's verified complaint is to be treated as an affidavit. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist....") (citations omitted).

In *Jeffreys v. City of New York*, the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." 426 F.3d 549, 554 (2d Cir. 2005). "To defeat summary judgment, ... nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). "To satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citation omitted); *Smith v. Woods*, No. 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). [4] "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

 *5  In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at the point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93

Civ. 5981 (WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) ).

## IV. PLAINTIFF'S FAILURE TO COMPLY WITH L.R. 7.1(a)(3)

While courts are required to give due deference to a plaintiff's *pro se* status, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). While Plaintiff has opposed Defendants' motion, he has failed to respond to Defendants' statement of material as required under L.R. 7.1(a)(3). [5] (Dkt. No. 57.) His response does not mirror Defendants' statement of material facts, nor does Plaintiff specifically admit or deny the statements therein or cite references to evidence in the record supporting of refuting Defendants' statements. *See id.* Where a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the facts in the movant's statement to which Plaintiff has not properly responded will be accepted as true (1) to the extent they are supported by evidence in the record, [6] and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion. [7] *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

 *6  This Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute where a non-movant willfully fails to respond to a properly filed summary judgment motion. *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted). In deference to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record.

## V. DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendants argue Plaintiff's excessive force claim arising from the July 1, 2016, incident should be dismissed on the ground that he failed to exhaust his administrative remedies.

### 1. Legal Standard

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) ); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly") (internal quotations omitted). In New York State prisons, DOCCS has a well-established three-step IGP. *See* N.Y. Comp. Codes R. & Regs. tit. 7 ("7 NYCRR"), § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence. *Id.* § 701.5(a)(1). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(I).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(I). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

*7 Grievances claiming employee harassment, including claims of excessive force, "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent. *Id.* § 701.8. [8] The superintendent is required to initiate an in-house investigation by higher ranking supervisory personnel; request an investigation by the inspector general's office; or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved. *Id.* § 701.8(d).

A grievance referred to the superintendent and determined to be an allegation of harassment, may not be withdrawn and must be addressed by the superintendent. *Id.* § 701.8(d). The superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g).

As set forth above, at each step of the IGP process, a decision must be rendered within a specified time period. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." *Id.* §§ 701.6(g), 701.8(g). Generally, if a plaintiff fails to follow each of the required three step of the above-described IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to

exhaust his administrative remedies and required under the PLRA. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.") (internal quotations and citations omitted) ); *see, e.g., Martin, II v. Niagara Cty. Jail*, No. 05-CV-868 (JTC), 2012 WL 3230435, at *6 (W.D.N.Y. Aug. 6, 2012) (inmate who fails to exhaust his administrative remedies is barred from commencing a federal lawsuit).

Because non-exhaustion is an affirmative defense, Defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004), *overruled on other grounds, Woodford*, 548 U.S. at 94-95.

### 2. Plaintiff's Failure to Exhaust

Plaintiff has averred that on or about July 14, 2016, he submitted a grievance regarding the July 1, 2016, incident while he was in the SHU at Washington. (Dkt. No. 41-2 at 141-43.) The undisputed record evidence establishes there is no record of this grievance have been filed at Washington or appealed to CORC. (Dkt. Nos. 41-9 at ¶ 9; 41-8 at ¶¶ 3, 4; 41-2 at 143-45.) Therefore, the Court finds Defendants have satisfied their burden of showing that Plaintiff failed to satisfy the exhaustion requirements before commencing this action. *See Woodford*, 548 U.S. at 93. [9]

### 3. Availability of the DOCCS IGP

**\*8** A prisoner's failure to exhaust does not end a court's exhaustion review. While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotations and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to

exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotations and citations omitted).

To guide courts in the "availability" analysis, the Supreme Court has identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. When one of the three circumstances is found, "an inmate's duty to exhaust 'available' remedies does not come into play." *Id.* at 1859. Once a defendant has satisfied the burden of establishing a failure to exhaust, the plaintiff must establish that the IGP was unavailable to him. *See Jones*, 549 U.S. at 216.

The Court finds that the question of availability in this case is governed by *Williams v. Corr. Officer Priatno*, 829 F.3d 118 (2d Cir. 2016), in which the Second Circuit held that the opacity of 7 NYCRR § 708.1(g) rendered the DOCCS IGP procedure unavailable to the plaintiff inmate and found that the plaintiff had exhausted his administrative remedies by giving his grievance to the corrections officer. Defendants' attempt to distinguish *Williams* from the case at bar is unpersuasive. (*See* Dkt. No. 41-11 at 12.)

As in this case, the inmate plaintiff in *Williams* claimed to have drafted a grievance complaining of an assault by corrections officers. *Williams*, 829 F.3d at 120-21. The plaintiff alleged he gave the grievance to a corrections officer for delivery to the IGP office because he was in the SHU. *Id.* Here, Plaintiff testified he placed the grievance in the mailbox located in the SHU and, in his opposition submission, explains he handed the grievance to a corrections officer to be placed in the SHU mailbox.

(Dkt. Nos. 41-2 at 141-43; 57 at 4, 6. [10] ) Significantly, the plaintiff in *Williams*, like Plaintiff herein, was transferred to another facility before hearing anything regarding the grievance he had attempted to file. *Id.* As in this case, it was undisputed in *Williams* that the inmate plaintiff never received a response to the unfiled grievance and did not appeal the grievance to CORC under 7 NYCRR § 701.8(g). *Id.* at 125.

**\*9** The Second Circuit acknowledged in *Williams* that under the DOCCS regulation relevant in both *Williams* and this case, an inmate may appeal a grievance "to the next step" if he does not receive a timely response from the Superintendent. *Williams*, 829 F.3d at 124. The Court concluded, however, that:

> even if Williams technically could have appealed his grievance, we conclude that the regulatory scheme providing for that appeal is "so opaque" and "so confusing that ... no reasonable prisoner can use [it]." *Ross*, 136 S. Ct. at 1859 (quoting Tr. of Oral Arg. 23). The regulations simply do not contemplate the situation in which Williams found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance.

*Id.* (alternations in original). Accepting Williams' allegation that the officer to whom he had given the grievance did not file it, the Court found:

> [u]nder that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that were actually filed. For example, if the grievance had never been filed, the superintendent would never have received it and the timeline for her to provide a response within 25 days "of receipt of the grievance" would never have been triggered. NYCRR tit. 7, § 701.8(f). In turn, the textual provision allowing a grievant to appeal to the CORC would never have come into effect. *See id.* § 701.8(g) ("If the superintendent fails to respond within the required 25 day calendar day time limit the grievant may appeal his/her grievance to CORC.") Accordingly, the regulations give no guidance whatsoever to an inmate whose grievance was never filed.

*Id.* The Court noted in *Williams* that the obscurity of the regulation was compounded by Williams' transfer to

another facility approximately two weeks after having given the grievance to the corrections officer. *Id.* at 126.

Here, Defendants contend Plaintiff has failed to sustain his burden of demonstrating unavailability under *Ross* sufficient to raise a material issue of fact. Specifically, Defendants argue Plaintiff has failed to show that the grievance procedure was so opaque as to render it incapable of use because "the regulations contemplate the very situation Plaintiff allegedly believed he was in —a filed grievance that went unanswered." (Dkt. No. 60 at 5.) In support of their motion, Defendants explain the regulations provide that an inmate who receives no response within the time allotted for response may go directly to the next step of the grievance process. *Id.* (citing 7 NYCRR §§ 701.6(g)(2), 701.8(g) ). Thus, after receiving no response from the facility superintendent within 25 days of purportedly submitting his grievance, Plaintiff could have appealed to CORC. *Id.* In short, Defendants argue, "the grievance process provided Plaintiff with a 'clear avenue to proceed.' " *Id.* (quoting *Cicio v. Wenderlich*, 714 F. App'x 96, 97-98 (2d Cir. 2018) (summary order) ("When a prisoner has filed a grievance, but receives no response, the regulations provide a right of appeal.") ). [11]

**\*10** However, "*Williams* holds that the process to appeal an *unfiled* and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Berman v. Durkin*, No. 9:13-CV-0136 (LEK/ DJS), 2017 WL 1215814, at \*8 (N.D.N.Y. Mar. 10, 2017) (emphasis in original), *report and recommendation adopted by* 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017); *see also Juarbe v. Carnegie*, No. 9:15-CV-01485 (MAD/ DEP), 2016 WL 6901271, at \*1 (N.D.N.Y. Oct. 7, 2016) ("In *Williams*, the Second Circuit held that when a plaintiff's grievance is both unfiled and unanswered, the regulations do not clearly outline the process to appeal or otherwise exhaust administrative remedies, and therefore, the administrative remedies are unavailable under *Ross*."). Therefore, "[a]s long as [the plaintiff's] grievances were not actually filed, then [the plaintiff's] current situation falls squarely within the Second Circuit's decision in *Williams*[.]" *Juarbe*, 2016 WL 6901271, at \*1.

Here, Plaintiff claims he submitted a grievance at Washington, and the next day he was transferred to Upstate. (Dkt. No. 41-2 at 141-42.) The undisputed evidence demonstrates Washington has no record of

Plaintiff's grievance. (Dkt. No. 41-9 at 2-3.) Drawing all inferences in the non-moving party's favor, Plaintiff's grievance was both unfiled and unanswered. In that situation, the Second Circuit has held the procedures "are so opaque and confusing that they were, 'practically speaking, incapable of use.' " *Williams*, 829 F.3d at 126 (quoting *Ross*, 136 S. Ct. at 1859). In light of *Williams*, the Court finds material issues of fact as to the availability of the grievance process and whether Plaintiff attempted to exhaust his administrative remedies, precluding summary judgment. *See, e.g., Fann v. Graham*, No. 9:15-CV-1339 (DNH/CFH), 2018 WL 1399331, at *6 (N.D.N.Y. Jan. 11, 2018) (finding issue of fact as to the availability of administrative remedies where the record suggested the plaintiff submitted grievances, which were unfiled and unanswered), *report and recommendation adopted by* 2018 WL 1399340 (N.D.N.Y. Mar. 19, 2018).

Therefore, the Court recommends that Defendants' motion for summary judgment on exhaustion grounds be denied without prejudice and with the opportunity to renew by way of an exhaustion hearing should Defendants request such a hearing.

### B. Official Capacity Claims

The Eleventh Amendment protects states against suits brought in federal court. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The immunity granted to the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state, *Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006), and, unless waived, bars all money damage claims against state officials acting in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985); *see also Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (observing that an inmate-plaintiff's claims for damages against individual corrections department employees sued in their official capacities are considered claims against New York and, therefore, are barred by the state's Eleventh Amendment immunity).

Therefore, to the extent Plaintiff seeks monetary damages from C.O. Mollnow and Sgt. Eisenschmidt in their official

capacities (*see* Dkt. No. 1 at 2, 15), the Court agrees with Defendants that such claims must be dismissed on Eleventh Amendment grounds. (*See* Dkt. No. 41-11 at 13.)

**WHEREFORE**, based on the findings above, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 41) be **GRANTED in part and DENIED in part**; and it is further

 **\*11 RECOMMENDED** that insofar as it seeks dismissal of Plaintiff's Eighth Amendment excessive force claim against Defendants in their official capacities, the motion be **GRANTED**; and it is further

**RECOMMENDED** that insofar as it seeks dismissal of Plaintiff's Eighth Amendment excessive force claim against Defendants on exhaustion grounds, the motion be **DENIED without prejudice** to Defendants renewing this argument and requesting an exhaustion hearing, and it is further

 **\*12 ORDERED** that the Clerk shall provide Plaintiff with a copy of this Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

 **\*13** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [12] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam) ); 28 U.S.C. § 636(b)(1) (Supp. 2013); *Fed. R. Civ. P. 72*, 6(a).

**All Citations**

Slip Copy, 2018 WL 4178226

---

Footnotes

1    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

2018 WL 4178226

2    The Court finds Plaintiff's complaint was adequately verified under 28 U.S.C. § 1746 by Plaintiff's declaration under penalty of perjury. (Dkt. No. 1.)

3    Plaintiff did not have a copy of the letters with him at the September 13, 2017, deposition. (Dkt. No. 41-2 at 147.) Plaintiff indicated he would provide copies of the letters to Defendants, provided they were not destroyed in his sister's house fire. *Id.* at 147-48.

4    The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

5    L.R. 7.1(a)(3) requires the opposing party to file a response to the movant's Statement of Material Facts. Under the rule, the response "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises."

6    L.R. 7.1(a)(3) provides that "<u>The Court shall deem admitted any properly supported facts set forth in the Statement of</u> <u>Material Facts that the opposing party does not specifically controvert.</u>" However, see *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts]. It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

7    Plaintiff was notified of the consequences of his failure to respond to Defendants' summary judgment motion pursuant to L.R. 56.2. (Dkt. No. 43.)

8    Section 701.8 has been found applicable to claims of excessive force. *See Torres v. Carry,* 691 F. Supp. 2d 366 (S.D.N.Y. 2009).

9    To the extent Plaintiff suggests he "exhausted" his administrative remedies by contacting the Commissioner, Governor, and Inspector General, among others, regarding the July 1, 2016, incident, "[t]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA." *Timmons v. Schriro,* Nos. 14-CV-6606 RJS, 14-CV-6857 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015); *see also Salmon v. Bellinger,* No. 9:14-CV-0827 (LEK/DJS), 2016 WL 4411338, at *4 (N.D.N.Y. July 5, 2016), *report-recommendation adopted by,* 2016 WL 4275733 (N.D.N.Y. Aug. 12, 2016); *Rodriguez v. Cross,* No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *4 (N.D.N.Y. May 9, 2017) (collecting cases); *see also Geer v. Chapman,* No. 9:15-CV-952 (GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies."). Thus, Plaintiff's informal complaints, whether written or verbal, outside of the grievance process, are insufficient to exhaust his administrative remedies. *See also Jones,* 549 U.S. at 218 (proper exhaustion under the PLRA means using all steps required by the applicable administrative review process).

10    In his opposition submission, Plaintiff states, "Plaintiff is 100% positive that he gave the on duty officer, that was working the special housing unit on July 14, 2016, the inmate grievance envelope to be placed into the facility out-going mailbox. (Dkt. No. 57 at 6.) The Court notes that according to the regulations, inmates in the SHU are instructed to file grievances by giving them to a corrections officer to file on behalf of the inmate. *See* 7 NYCRR § 701.7.

11    In *Cicio,* the Second Circuit found that the grievance process in Cicio's case was not so opaque that it became "incapable of use." *Cicio,* 714 F. App'x at 97-98 (citing *Ross,* 136 S. Ct. at 1859). In so holding, the Court compared and distinguished Cicio's situation from that of the plaintiff in *Williams. See id.* (*cf. Williams v. Priatno,* 829 F.3d 118, 126 (2d Cir. 2016) (finding that appellate process was too opaque in circumstances where inmate alleged that a prison guard did not file his grievance and the inmate had since been transferred) ). Here, by contrast, the Court finds Plaintiff's circumstances more closely resemble that of the plaintiff in *Williams.* Thus, for the same reasons, Defendants' reliance on recent rulings by summary order by the Second Circuit are easily distinguishable and inapposite. (*See* Dkt. No. 41-11 at 12.)

12    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

2018 WL 4153926
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Keith I. HURST, Plaintiff,

v.

A. MOLLNOW, Correctional Officer, Washington
Correctional Facility; and Eisenschmidt, Sergeant,
Washington Correctional Facility, Defendants.

9:16-CV-1062 (DNH/TWD)
|
Signed August 29, 2018
|
Filed 08/30/2018

**Attorneys and Law Firms**

KEITH I. HURST, 105 Hunter Avenue, #2, Albany, NY
12206, pro se.

BARBARA D. UNDERWOOD, OF COUNSEL:
MARK G. MITCHELL, ESQ., Ass't Attorney General,
Attorney General for the State of New York, The Capitol,
Albany, NY 12224, Attorney for Defendants.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**\*1** Pro se plaintiff Keith I. Hurst brought this civil
rights action pursuant to 42 U.S.C. § 1983. On July 20,
2018, the Honorable Thérèse Wiley Dancks, United States
Magistrate Judge, advised by Report-Recommendation

that defendants' motion for summary judgment be granted
in part and denied in part. No objections to the Report-
Recommendation were filed.

Based upon a careful review of the Report-
Recommendation, the Report-Recommendation is
accepted in whole. See 28 U.S.C. § 636(b)(1).

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is
GRANTED in part and DENIED in part;

2. Defendants' motion for summary judgment dismissing
plaintiff's Eighth Amendment excessive force claim
against defendants in their official capacities is
GRANTED and those claims are DISMISSED;

3. Defendants' motion for summary judgment dismissing
plaintiff's Eighth Amendment excessive force claim based
on non-exhaustion is DENIED without prejudice to
defendants renewing this argument and requesting an
exhaustion hearing; and

4. Trial is scheduled for February 5, 2019 in Utica, New
York.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2018 WL 4153926

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)

2017 WL 2791063

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 54 of 64

2017 WL 2791063
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Edy RODRIGUEZ, Plaintiff,
v.
J. CROSS, Sergeant, Clinton
Correctional Facility; et al., Defendants.

No. 15-CV-1079 (GTS/CFH)
|
Signed 05/09/2017

**Attorneys and Law Firms**

Edy Rodriguez, East Elmhurst, NY, pro se.

Ryan E. Manley, Harris, Conway & Donovan, Christopher J. Hummel, New York State Attorney General, Albany, NY, for Defendants.

**REPORT-RECOMMENDATION AND ORDER** [1]

Christian F. Hummel, U.S. Magistrate Judge

*1 Plaintiff pro se Edy Rodriguez ("Plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that Sergeant ("Sgt.") J. Cross, Sgt. R. Furnia, Correction Officer ("C.O.") G. Falcon, and C.O. J. Roberts (collectively "Defendants") violated his constitutional rights under the First and Eighth Amendments. Dkt. No. 1 ("Compl."). [2]

Presently pending is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(a) for plaintiff's failure to exhaust administrative remedies before commencing this action. Dkt. No. 26. Plaintiff filed a response in opposition to defendants' motion. Dkt. No. 34. Defendants filed a reply. Dkt. No. 39.

**I. Background**

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See subsection II(A)

infra. At the relevant times giving rise to plaintiff's claims, plaintiff was an inmate incarcerated at Clinton Correctional Facility ("Clinton").

On July 10, 2014, plaintiff wrote a letter to Sgt. Cross "complaining about being harassed" by staff at Clinton. Compl. at 4. Plaintiff further alleges that he was taken out of his cell on July 14, 2014, brought to the second floor of the facility's hospital, and subjected to a "beating" by defendants. Compl. at 4-5. Sgt. Cross grabbed him by the hair; Sgt. Furnia punched him; and C.O. Falcon and C.O. Roberts punched him in the face, back, and neck. Id. at 4. Plaintiff alleges "each one of the blows" he suffered was from the named defendants, as well as other officers he cannot identify by name. Id. at 5-6. After the alleged incident, plaintiff was seen by a nurse with "about ten" officers present in the room, where he admits "having no choice," but to tell the nurse that officers had just beat him up. See Affirmation of Christopher J. Hummel ("Hummel Aff."), Dkt. No. 26-1, Exhibit ("Exh.") A [3] at 59-60. [4]

While at Clinton, plaintiff filed five grievances. See Declaration of Christine Gregory ("Gregory Decl."), Dkt. No. 26-3 Exh. A at 6. Only one grievance was appealed. Declaration of Jeffrey Hale ("Hale Decl."), Dkt. No. 26-2 ¶¶ 12-13. The subject matter of the single appealed grievance does not concern the matter before the Court. Id. ¶ 12. The only grievance filed that is pertinent to the pending motion was filed on July 29, 2014. See Gregory Decl. Exh. B at 8. This grievance alleges that plaintiff suffered "an assault by (C.O.)" and, following the assault, did not receive appropriate medical care. Id. The investigation into the July 29, 2014 grievance concluded that plaintiff saw his medical provider, and medicine was given to him without any further action. Id. at 10. The investigation did not mention anything about an assault. Id.

*2 Plaintiff alleges that he filed a grievance regarding the incidents described in his complaint, but an unidentified Sergeant destroyed the grievance. Compl. at 2. He also alleges that he was beaten by correction staff for filing the grievance. Id. Plaintiff also states that he filed a handwritten grievance (not on a grievance form) on July 19, 2014, regarding the July 14, 2014 incident. See Hummel Aff. Exh. A at 93. Plaintiff alleges that he sent a copy of this grievance to his mother and instructed her to send it directly to Clinton "[f]rom outside." Id. at 94. Defendants have no record of this grievance being filed.

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 55 of 64

**Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)**

2017 WL 2791063

See Gregory Decl. Exh. A at 6. Plaintiff never inquired further about the July 19, 2014 grievance, but maintains that he has handwritten copies of the grievance since he did not have access to carbon paper when he originally drafted this grievance. See Hummel Aff. Exh. A at 94-95, 96-97. The July 19, 2014 grievance was drafted while plaintiff was in keeplock. Id. at 93.

Plaintiff further alleges, in his response to defendants' motion for summary judgment, that defendants have total control over facility mail and any failure to exhaust administrative remedies occurred because defendants strategically removed grievances from the mailbox to cover up their use of excessive force against plaintiff. See Dkt. No. 34 at 4. Plaintiff further alleges a general belief that there is a pattern of prison officials threatening and retaliating against inmates for filing grievances, thus making administrative remedies unavailable. Id. at 6. Lastly, plaintiff alleges that there is an "unwritten posture" at Clinton where inmates are not given grievance forms unless they provide a clear description of their complaint, or the complaint does not involve staff misconduct. Id. at 8.

## II. Discussion [5]

Plaintiff alleges that defendants retaliated against him in violation of the First Amendment, used excessive force against him in violation of the Eighth Amendment, and violated his Due Process rights under the First and Fourteenth Amendments. See Compl. at 7. Defendants argue that plaintiff's complaint should be dismissed in its entirety as plaintiff failed to exhaust his administrative remedies with respect to the causes of action outlined in the Complaint. See Defendants' Memorandum of Law, Dkt. No. 26-5 at 3.

### A. Legal Standard For Motions Pursuant to Fed. R. Civ. P. 56(a)

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "In determining whether summary judgment is appropriate, [the Court] will resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Carey, 923 F.2d at 19. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. Partnership, 22 F.3d, 1219, 1224 (2d Cir. 1994).

**\*3** Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law" ....

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)

2017 WL 2791063

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 56 of 64

**B. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies " 'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " Mauldin v. Kiff, No. 11-CV-107-A, 2014 WL 2708434, at *4 (W.D.N.Y. June 16, 2014) (quoting Porter, 534 U.S. at 532). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Porter, 534 U.S. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 U.S. 680, 686 (2d Cir. 2004). Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, the Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). As such, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

**\*4** Although the Supreme Court's decision in Ross eliminates the "special circumstances" exception promulgated by Hemphill, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception,

courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Here, there is no genuine dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5. First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the Inmate Grievance Review Committee ("IGRC") must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(1)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

**1. Application**

First, the Court will address whether there is any genuine dispute that plaintiff failed to exhaust his administrative

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 57 of 64

2017 WL 2791063

remedies. Courts in the Second Circuit have consistently held that any informal resolutions or relief outside of the administrative procedures do not satisfy exhaustion requirements. See, e.g., Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) (holding that regardless of whether prison officials know of plaintiff's complaints in a "substantive sense," procedural exhaustion of remedies must still occur); Ruggiero v. Cty. of Orange, 467 F.3d 170, 177-78 (2d Cir. 2006); Perez v. City of N.Y., No. 14 CIV. 07502(LGS), 2015 WL 3652511, at *4 (S.D.N.Y. June 11, 2015) ("Plaintiff's allegation that he advised others of his grievance does not excuse his failure to exhaust the administrative process.").

Here, subsequent to the alleged events giving rise to the matter before the Court, plaintiff states he and family members contacted the Inspector General's Office to complain about prison conditions and concerns of plaintiff's safety. See Hummel Aff. Exh. A at 89, 90. Such correspondence does not satisfy exhaustion and falls outside of the grievance procedures. See Geer v. Chapman, No. 9:15-CV-952(GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016), report and recommendation adopted, No. 9:15-CV-952 (GLS/ ATB), 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies."); Salmon v. Bellinger, No. 9:14-CV-0827(LEK/DJS), 2016 WL 4411338, at *4 (N.D.N.Y. July 5, 2016), report and recommendation adopted by, No. 9:14-CV-0827(LEK/DJS), 2016 WL 4275733 (N.D.N.Y. Aug. 12, 2016) (holding that letters sent to the Inspector General do not satisfy exhaustion procedures).

 *5 After the alleged incident of excessive force, plaintiff was seen by a nurse in a room with "about ten" officers present, where he admits "having no choice" but to tell the nurse that the officers had beat him up. Hummel Aff. Exh. A at 59-60. Plaintiff alleges filing grievances on July 19, 2014 and July 29, 2014 that mention the assault. See id. at 93; Gregory Decl. Exh. B at 6, 8-10. Defendants state that there is no record of appeal on any grievances pertaining to the alleged assault. Gregory Decl. ¶ 15. While plaintiff's complaints were aired verbally and in writing, plaintiff failed to utilize the procedures required to exhaust administrative remedies. Timmons v. Schriro, No. 14-CV-6606(RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("[T]he law is well-settled that informal means of communicating and pursuing a grievance, even

with senior prison officials, are not sufficient under the PLRA."). Thus, there is no genuine dispute that plaintiff failed to exhaust administrative remedies.

As a result, the Court must determine whether administrative remedies were in fact available to plaintiff. See Ross, 136 S. Ct. at 1858 ("An inmate ... must exhaust available remedies, but need not exhaust unavailable ones"); Mena v. City of New York, No. 13-cv-2430(RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) (citing Ross, 136 S. Ct. at 1862) ("[T]he lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are 'available' to him."). Plaintiff sets forth three factual arguments as to why administrative remedies were not available to him. First, plaintiff alleges that the grievance procedures were unavailable to him because he was denied access to paper and writing instruments. See Compl. at 3. Next, plaintiff alleges that he was physically beaten when he attempted to take steps to utilize the grievance process. Id. Lastly, plaintiff suggests that he never received a response to his grievance, his mail was tampered with, and his letters were not delivered. See Hummel Aff. Exh. A at 91-92, 94.

### a. Lack of Paper and Pen to Complete Grievance Procedures

The third prong of Ross is triggered by plaintiff's argument that he was denied access to pen and paper, as it shows an alleged attempt to stop him from taking part in the grievance process. When a plaintiff-inmate asserts that a defendant-facility withheld pens, courts have granted summary judgment against a plaintiff when "the record does not show that '[p]laintiff indicated to prison officials that he needed a pen so he could file a grievance or that prison officials refused to provide him a pen for this purpose." Mena v. City of N.Y., No. 12 CIV. 6838(GBD), 2013 WL 3580057, at *2 (S.D.N.Y. July 10, 2013). When an inmate argues that a correction officer denies him access to pen or paper, even assuming the allegations are true, courts examine whether the inmate was drafting other documents during the same time period, or whether they were able to access materials from other sources. See Williams v. Ramos, No. 13 CV 826(VLB), 2015 WL 864888, at *3 (S.D.N.Y. Feb. 9, 2015) ("It is unclear how plaintiff was able to submit [other] grievances if defendants took his pens and paper and threatened him ...

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 58 of 64

2017 WL 2791063

Moreover, when defendants allegedly stole his pens and papers, plaintiff testified he was able to file grievances on his commissary sheet."); Lahoz v. Orange Cty. Jail, No. 08 CIV. 4364(RWS), 2010 WL 1789907, at *3 (S.D.N.Y. Apr. 29, 2010) (stating that an inmate was not deprived of writing materials when he drafted a handwritten letter during the same time period as the grievance process).

Here, the Court notes contradictory statements within the complaint pertaining to plaintiff's access to writing instruments or paper. When prompted as to why facts relating to the complaint were not presented in the grievance program, plaintiff asserts that he was denied a paper or pen. Compl. at 3. However, plaintiff also states that he wrote a grievance, the grievance was destroyed by a Sergeant, and he was beaten in retaliation for writing the grievance. See id. at 2. The only time plaintiff asserts that he was denied a paper and pen was when he was taken to the Special Housing Unit ("SHU") [6] on July 14, 2014 after the alleged incident. See id. at 3; Hummel Aff. Exh. A at 68. In fact, records indicate that plaintiff filed grievances on July 19, July 29, August 4, and November 19 of that same year. [7] Gregory Decl. Exh. A at 6. Plaintiff does not allege any difficulties obtaining a pen and paper after the July 2014 SHU stay, but rather, admits having "a piece of paper that an inmate had and a pen" on at least one occasion. See id. at 94.

**\*6** Lastly, in his response to defendants' motion for summary judgment, plaintiff alleges that there is an "unwritten posture" at Clinton where inmates are not given grievance forms unless they provide a clear description of their complaint, or if their complaint does not involve staff misconduct. Dkt. No. 34 at 8. Such general allegations without any factual support are insufficient to show that procedures were unavailable, coupled with the fact that, grievances can and have been submitted by plaintiff on plain paper. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1) ("If this form is not readily available, a complaint may be submitted on plain paper."); see Veloz v. N.Y., 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004), aff'd, 178 Fed.Appx. 39 (2d Cir. 2006) (granting summary judgment where plaintiff does not allege that any specific officer thwarted his efforts to timely file a grievance); Hummel Aff. Exh. A at 94.

Even if the Court assumes that plaintiff was denied access to pen and paper while in the SHU, the grievances filed in July 2014 were filed within the twenty-one calendar days required, and his subsequent failure to exhaust administrative remedies regarding those grievances is unaffected by any denial of pen and paper that occurred in the past. Thus, the Court rejects plaintiff's argument as there is no genuine dispute of fact that administrative remedies were unavailable due a lack of writing instruments or paper.

### b. Allegation that Grievance Was Not Received and Mail Tampering

Courts have long held that where an inmate does not receive a response to a written grievance, the inmate must appeal to the next level of review. See Khudan v. Lee, No. 12-cv-8147(RJS), 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing a plaintiff's complaint where plaintiff failed to appeal to the next level of review after not receiving a response to his filed grievance); see also Veloz v. New York, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004), aff'd, 178 Fed.Appx. 39 (2d Cir. 2006) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming.").

However, recent decisions by courts in the Second Circuit have addressed the availability of administrative remedies when an inmate's grievance is unfiled and unanswered. These cases have focused on the second prong of the Ross test, where a grievance process becomes unusable for an inmate. Ross, 136 S. Ct. at 1859. In Williams v. Priatno, the Second Circuit held that when an inmate's grievance is not filed, "the regulations plainly do not describe a mechanism for appealing a grievance." See 829 F.3d at 126. Thus, "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." Id. The Williams ruling relied upon a scenario where an inmate is housed in a SHU and personally gives a grievance to a correction officer, as required by grievance procedures. Id. at 120-21. Additionally, adding to the "opaque" nature of the procedures, the plaintiff in Williams followed up when he did not receive a response after a week, but was subsequently transferred one week later without any resolution or knowledge of his grievance being filed. Williams, 829 F.3d at 120-21. Ultimately, the Williams Court held that "in giving his grievance

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 59 of 64

2017 WL 2791063

to the correction officer, [the plaintiff] exhausted all administrative remedies that were available to him." Id. at 126.

Here, in his September 19, 2016 deposition, plaintiff sets forth facts suggesting prison staff filtered his mail and "when they [saw] grievances" they were thrown to the side, not delivered, "and were never [ ] seen." See Hummel Aff. Exh. A at 91-92. The grievance that plaintiff allegedly filed on July 19, 2014 was sent to the Clinton grievance office by his mother. Id. at 94. Plaintiff never received a response on the grievance or followed up on the status of the grievance. Id. Without concrete facts, plaintiff states that his grievance was not resolved because "no civilian ... picks up your grievances. It's officers." Id. at 91. Plaintiff's allegations of mail tampering are conclusory and weakened by the fact that other correspondence, including complaints, were sent and received during the general time period material to the issues before the Court. Johnson v. Fraizer, No. 16-CV-6096(CJS), 2016 WL 7012961, at *4 (W.D.N.Y. Dec. 1, 2016) ("Plaintiff makes only a conclusory statement that his mailing was not allowed to leave the facility[,] ... his contention ... is belied by his admission that he was able to send other complaints about the matter to various New York State officials at around the same time."); see Hummel Aff. Exh. A at 89, 94 (providing an example where plaintiff successfully sent legal mail to his mother).

*7 In plaintiff's response in opposition to defendants' motion for summary judgment, he raises general complaints about defendants having total control over facility mail and defendants strategically removing grievances from the mailbox to cover up their excessive use of force against plaintiff and other inmates. See Dkt. No. 34 at 2. Plaintiff's bare assertions do not excuse exhaustion requirements. Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations. Khudan, 2016 WL 4735364, at *6 (citations omitted) (holding that under Ross, mere stand alone contentions of mail tampering without support and particularity cannot deem administrative remedies unavailable); Veloz, 339 F. Supp. 2d at 516 (holding that summary judgment is proper where the plaintiff contends that officers misplaced his grievances, but offers no evidence to support his claim). In Khudan, the court did not consider or rely upon conclusory allegations when

plaintiff attested he "was informed by other [unnamed] inmates that grievances routinely go 'missing.' " Khudan, 2016 WL 4735364, at *6. This is similar to plaintiff's conclusory theory of injustice and displeasure with mail procedures, and other "recurrent pattern[s]" in New York correctional facilities. Dkt. No. 34 at 2, 4; see Khudan, 2016 WL 4735364, at *6 ("Plaintiff's accusations, which 'stand alone' and are 'unsupported,' are insufficient to withstand summary judgment.") (quoting Bolton v. City of N.Y., No. 13-CV-5749(RJS), 2015 WL 1822008, at *2 (S.D.N.Y. Apr. 20, 2015)).

Courts have denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU. See, e.g., Juarbe v. Carnegie, No. 9:15-CV-01485(MAD/DEP), 2016 WL 6901277, at *1, 4 (N.D.N.Y. Nov. 23, 2016). This is distinguishable from plaintiff's alleged July 19, 2014 grievance drafted in keeplock. [8] Such a difference in inmate housing supports the notion that, "the Second Circuit's decision hinged on the 'extraordinary circumstances' specific to the case before it." Mena v. City of N.Y., No. 13-CV-2430(RJS), 2016 WL 3948100, at *5 (S.D.N.Y. July 19, 2016) (quoting Williams, 829 F.3d at 119); see N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7 (explaining that there are different grievance filing procedures for an inmate housed in the SHU). Inmates not housed in the SHU are in a different position to SHU inmates when determining if grievance procedures are "essentially unknowable" or unavailable. Id. at *5 (quoting Ross v. Blake, 136 S. Ct. at 1859).

Plaintiff never followed up on the July 19, 2014 grievance. Hummel Aff. Exh. A at 94-95. However, on July 29, 2014, he filed a grievance in the facility that included medical complaints, but also a reference to the alleged assault on July 14, 2014. See Gregory Decl. Exh. B at 8. The Clinton grievance department received and responded to this grievance. Id. This grievance was not appealed. Id. ¶ 15. Even assuming, as the Court must on this motion, that plaintiff's allegations of mail tampering are true, he did not exhaust his administrative remedies when he failed to appeal the July 29, 2014 grievance to the next level of review. The fact that this grievance was subsequently filed and not appealed within close proximity to the July 19, 2014 grievance, coupled with three unrelated grievances filed within the next year, demonstrates that plaintiff's situation does not rise to the level where the grievance process is "opaque," unavailable, or unascertainable. See Hill v.

Case 9:17-cv-01069-GTS-DEP   Document 32   Filed 11/07/18   Page 60 of 64

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)
2017 WL 2791063

Tisch, No. 02CV3901(DRH/AYS), 2016 WL 6991171, at *7 (E.D.N.Y. Nov. 29, 2016) (finding that the plaintiff failed to demonstrate that the grievance "procedures were essentially unknowable"); Gregory Decl. Exh. A at 6.

### c. Allegation that Plaintiff Suffered Retaliation and Physical Beatings

Plaintiff's pleadings also suggest an inquiry under the third prong of Ross, whether "machination, misrepresentation, or intimidation" occurred. See Ross, 136 S. Ct. at 1860. Specifically, plaintiff alleges that he did not comply with the grievance procedures because he was subjected to physical beatings, retaliation, and intimidation after complaining about conditions at Clinton. See Compl. at 3, 4, 7. For these reasons, he believed the grievance procedures were unavailable. See id. at 2-3.

 **8** Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable. Ross, 136 S. Ct. at 1860 & n.3. However, a generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative remedies. Salmon, 2016 WL 4411338, at *5. Estoppel is found where "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers" occur showing that defendants acted affirmatively to prevent an inmate from availing him or herself of the grievance procedures. Id. at *5 (quoting Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011)). In Riles, the Second Circuit affirmed a district court's ruling that prison officials' alleged threats did not interfere with exhaustion efforts when plaintiff stated he was threatened "if he pushed the issue," but then subsequently filed a grievance in spite of the alleged threats. See Riles v. Buchanan, 656 Fed.Appx. 577, 581 (2d Cir. 2016) (summary order).

Relying on Ross, courts have carved out factual limitations to the third prong of unavailability concerning fear of retaliation. See, e.g., Aviles v. Tucker, No. 14-CV-08636(NSR), 2016 WL 4619120, at *3-4 (S.D.N.Y. Sept. 1, 2016) (citing Ross, 136 S. Ct. at 1860). In Aviles, the court noted a longstanding rule that general beliefs of retaliation or fears do not excuse the exhaustion requirement. Aviles, 2016 WL 4619120, at *4 (citations omitted). Circumstances that have met the threshold of

unavailability by means of intimidation have included widespread beatings with assertions of fear for one's life, in conjunction with the plaintiff withholding all complaints until he was transferred to a different facility. See, e.g., id. (quoting Thomas v. Cassleberry, No. 03-cv-6394L, 2007 WL 1231485, at *2 (W.D.N.Y. Apr. 24, 2007)). Allegations of threats are conclusory where a plaintiff's allegation "does not indicate who threatened him, when he was threatened, or how he was threatened." See Johnson v. Fraizer, No. 16-CV-6096(CJS), 2016 WL 7012961, at *5 (W.D.N.Y. Dec. 1, 2016). In contrast, this Court has denied a summary judgment motion when a plaintiff alleged he was threatened by a specific correction that the officer would "break [plaintiff's] bones," and another specific correction officer threatened to beat plaintiff "a [sic] inch from life" if he filed a grievance. Galberth v. Durkin, No. 914CV115(BKS/ATB), 2016 WL 3910270, at *3 (N.D.N.Y. July 14, 2016).

Here, plaintiff offers conclusory allegations in his complaint that "[he] was beaten" while attempting to access Clinton's grievance program. Compl. at 2, 3. Plaintiff offers no information of when or how he was threatened or beaten after the July 14, 2014 incident. Some instances of threats alleged by plaintiff refer to a time period before he filed a grievance and he does not state how any specific threat or subsequent act of violence impacted his ability to exhaust administrative remedies related to the events that occurred on July 14, 2014. See Aviles, 2016 WL 4619120, at *4 (finding grievance procedures available where plaintiff offers conclusory allegations of fear and does not substantiate what specific fears or past acts preclude him from advancing in grievance procedures); Harrison v. Stallone, No. 9:06-CV-902(LEK/GJD), 2007 WL 2789473, at *5 (N.D.N.Y. Sept. 24, 2007) ("It has been held that a 'general fear' of retaliation is not sufficient to excuse the exhaustion requirement.... If an inmate could simply state that he feared retaliation, there would be no point in having a grievance procedure.") (citations omitted); see, e.g., Hummel Aff. Ex. A at 58. Much of plaintiff's fear is generalized. For instance, he notes that corrections officers become agitated when they see legal mail and "that's when harassment comes." Hummel Aff. Ex. A at 92. By his own admission, plaintiff denies any actual physical force being used against him that prohibited him from taking part in the grievance program. Hummel Aff. Ex. A at 99; see Salmon, 2016 WL 4411338, at *5 (stating there must be affirmative actions or specific instances of

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 61 of 64

2017 WL 2791063

physical assault or threats of retaliation for plaintiff to show unavailability of the grievance process).

**\*9** The Court notes that plaintiff directly contradicted allegations in his complaint by statements made in his deposition. While the complaint alleges conclusory instances of being "beaten by staff," plaintiff admits that other than being cut on his face by an inmate in the yard on October 5, 2015, there has not been any other physical force used against him by inmates or correction officers since July 14, 2014. Hummel Aff. Ex. A at 99; Compl. at 3. This statement contradicts plaintiff's allegations of being beaten by staff. See Williams v. Doe, No. 12-CV-1147(HKS), 2016 WL 4804057, at *5 (W.D.N.Y. Sept. 14, 2016) (granting a motion for summary judgment after noting that any triable issue of fact on exhaustion of administrative remedies can be eliminated when plaintiff's prior representations to the court are "flatly contradict[ed]").

Further, this Court finds that plaintiff's failure to follow the grievance procedures cannot be excused by fears or intimidation, when he simultaneously made his complaints known through other means. After the alleged incident, plaintiff was seen by a nurse in a room with "about ten" officers, where he admits "having no choice," but to tell the nurse that they had beaten him. Hummel Aff. Ex. A at 57-58. Plaintiff also aired his complaints and concerns in writing outside of the grievance procedures, clearly identifying his complaints in full substance, including the identification of those who committed acts against him. See, e.g., Hummel Aff. Ex. A at 93; Gregory Decl. Exh. A at 8. Similarly in Johnson v. Fraizer, the Court rejected plaintiff's argument that administrative remedies were unavailable where the plaintiff alleged he was threatened by correction officers but continued to make and send formal complaints to prison officials and other New York State officials. Johnson v. Fraizer, No. 16-CV-6096 (CJS), 2016 WL 7012961, at *5 (W.D.N.Y. Dec. 1, 2016). By plaintiff's own admission, it is clear that he sought to file the initial grievance and tell others about his complaints, which disprove any claim of intimidation or fear of retaliation. Quick v. Omittee, No. 14-CV-1503(TJM/CFH), 2016 WL 5219732, at *4 (N.D.N.Y. Aug. 11, 2016), report and recommendation adopted, No. 914CV1503 (TJM/CFH), 2016 WL 5107125 (N.D.N.Y. Sept. 20, 2016) (holding

that fear of physical retaliation or assaults does not deem grievance procedures unavailable when plaintiff continuously sought to file complaints with officials). Like in Quick, where the plaintiff filed formal internal grievances and the grievance procedures were deemed available, here the plaintiff alleges drafting two internal grievances outlining the alleged July 14, 2014 incident. See id. at * 4; Hummel Aff. Exh. A at 93; Gregory Decl. Exh. B at 8. Thus, plaintiff has not shown that administrative remedies were unavailable due to intimidation and threats.

In conclusion, the Court finds that defendants have met their burden in showing that there is no genuine issue of material fact as to plaintiff's failure to exhaust administrative remedies. Accordingly, the Court recommends that defendants' motion be granted.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 26) on plaintiff Edy Rodriguez's complaint (Dkt. No. 1) be **GRANTED**; and it is further

**RECOMMENDED** that plaintiff Edy Rodriguez's complaint (Dkt. No. 1) be **DISMISSED** in its entirety, without prejudice; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties in this action, pursuant to local rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F. 2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F. 2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

### All Citations

Not Reported in Fed. Supp., 2017 WL 2791063

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)
2017 WL 2791063

Footnotes

1   This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2   On March 27, 2017, this Court granted plaintiff an extension until May 1, 2017 to file a motion to amend his complaint. Dkt. No. 38. The deadline has expired and plaintiff has not filed a motion to amend his complaint.

3   Exhibit A to the Affirmation of Christopher J. Hummel is a transcript of plaintiff's deposition, held on September 19, 2016 at Great Meadow Correctional Facility. See Dkt. No. 26-1.

4   When citing documents within the record, the Court uses the page numbers generated by CM/ECF.

5   All unpublished opinions cited to by the Court in this Report-Recommendation and Order are, unless otherwise noted, attached to this Report-Recommendation and Order.

6   SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population...." N.Y. COMP. CODES R. & REGS. tit. 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

7   Both the August and November grievances are unrelated to the cause of action before the Court. Gregory Decl. Exh. A at 6.

8   "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3s 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Rodriguez v. Cross, Not Reported in Fed. Supp. (2017)

Case 9:17-cv-01069-GTS-DEP    Document 32    Filed 11/07/18    Page 63 of 64

2017 WL 2790530

2017 WL 2790530
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Edy RODRIGUEZ, Plaintiff,

v.

J. CROSS, Sergeant, Clinton Corr. Fac.; R.
Furnia, Sergeant, Clinton Corr. Fac.; G. Falcon,
Corr. Officer, Clinton Corr. Fac.; and J. Roberts,
Corr. Officer, Clinton Corr. Fac., Defendants.

9:15-CV-1079 (GTS/CFH)
|
Filed 06/27/2017

**Attorneys and Law Firms**

EDY RODRIGUEZ, No. 8951602009, Anna M. Kross
Center, 18-18 Hazen Street, East Elmhurst, New York
11370, Pro Se.

HON. ERIC T. SCHNEIDERMAN, OF COUNSEL:
CHRISTOPHER J. HUMMEL, ESQ. Assistant
Attorney General, The Capitol Albany, New York 12224,
Attorney General for the State of New York, Counsel for
Defendants.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, Chief United States
District Judge

**\*1** Currently before the Court, in this *pro se*
prisoner civil rights action filed by Edy Rodriguez
("Plaintiff") against the four above-captioned employees
of the New York State Department of Corrections
and Community Supervision at Clinton Correctional
Facility in Dannemora, New York ("Defendants"), are
Defendants' motion for summary judgment seeking
dismissal of Plaintiff's Complaint for failure to exhaust

his administrative remedies, and United States Magistrate
Judge Christian F. Hummel's Report-Recommendation
recommending that Defendants' motion be granted and
that Plaintiff's Complaint be dismissed in its entirety
without prejudice.[1] (Dkt. Nos. 26, 40.) Plaintiff has not
filed an Objection to the Report-Recommendation despite
having received an extension of the filing deadline, which
has expired. (Dkt. No. 42.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Hummel's thorough Report-
Recommendation, the Court can find no clear-error in the
Report-Recommendation.[2] Magistrate Judge Hummel
employed the proper standards, accurately recited the
facts, and reasonably applied the law to those facts. (Dkt.
No. 40.) As a result, the Report-Recommendation is
accepted and adopted in its entirety for the reasons set
forth therein; Defendants' motion for summary judgment
is granted; and Plaintiff's Complaint is dismissed in its
entirety without prejudice.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-
Recommendation (Dkt. No. 40) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary
judgment (Dkt. No. 26) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is
**DISMISSED** in its entirety without prejudice; and it is
further

**ORDERED** that the Clerk of the Court shall enter
Judgment for Defendants and close this action.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2790530

Footnotes

1    The Court notes that Assistant Attorney General Christopher J. Hummel is of no relation to U.S. Magistrate Judge
     Christian F. Hummel.

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a
     clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear
     error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept
     the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995)

2017 WL 2790530

(Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

---

**End of Document**                                  © 2018 Thomson Reuters. No claim to original U.S. Government Works.